May Term,
1850.

McClerry
v.
Matson.

*Per Curiam.*—The decree is affirmed with costs, &c.

*J. S. Scobey* and *A. Davison*, for the appellant.

*A. L. Robinson*, for the appellee.

---

McClerry and Others, infants, by McClerry, their next
friend, *v.* Matson, administrator of the estate of Knight,
deceased.

A resident of this state died, leaving heirs of the whole blood and the
heirs of a deceased half-sister. The intestate owned property in this
state and in *Mississippi*. An administrator was appointed in each of the
states. Under the laws of *Mississippi*, the half-blood did not inherit.
300 dollars remained in the hands of the administrator here, and 3,277
dollars in the hands of the administrator in *Mississippi*. Under an order
of the Court of the latter state, to which the heirs were not parties, the
administrator there distributed, to the brothers and sisters of the whole
blood, the sum in his hands, which amounted to over 600 dollars to
each. The heirs of the half-blood, in their petition below, claimed the
whole amount in the hands of the administrator here for distribution.
The Court refused to grant their petition. *Held*, that there is no objec-
tion to allowing the petitioners the 300 dollars in the hands of the ad-
ministrator here.

ERROR to the *Franklin* Probate Court.

Perkins, J.—This was a petition under the 351st section
of c. 30 of the R. S., p. 549, by *Andrew R. McClerry*,
*William McClerry*, and *Ellen McClerry*, children and heirs
of *Ellen McClerry*, deceased, formerly *Ellen Knight*, a
half-sister of *Thomas J. Knight*, deceased, against *John A.
Matson*, administrator of the estate of said *Thomas J.
Knight*, claiming a distributive share of said estate.

*Thursday,*
*May 30.*

The facts of the case are these:

Said *Thomas J. Knight* died, a lunatic, in *Cincinnati, Ohio,* in 1844, leaving property in *Brookville, Indiana,* and in *Natchez, Mississippi.* On the 12th day of *August,* 1844, letters of administration upon his estate were granted, by the *Franklin* Probate Court of *Indiana,* to *John A. Matson,* who was duly qualified and took upon himself the burthen of the appointment. In *December,* 1844, the Probate Court of *Adams* county, *Mississippi,* granted letters of administration upon said *Knight's* estate to *John Knight,* of the city of *Natchez,* in said state, who was duly qualified, and who acted. Upon settlement of the estate in this state, by *Matson,* there remained in his hands 300 dollars for distribution among the heirs. Upon settlement of the estate in *Mississippi,* there remained in the hands of *Knight,* the administrator there, 3,277 dollars and 20 cents for distribution among the heirs. By the law of *Mississippi* the half-blood does not inherit. By the law of *Indiana* it does. *Knight,* the *Mississippi* administrator, under the order of the Court there, distributed the whole amount in his hands to the five brothers and sisters of the whole blood, giving them 653 dollars and 44 cents apiece. The petitioners in this case, succeeding to the rights of the sister of the half-blood, now claim the entire sum in the hands of *Matson* for distribution, 300 dollars, it being less than sufficient to make them equal with either of the heirs of the whole blood. The Court below refused to grant their petition.

In considering this case, the first question to be determined is, where was the domicil of *Thomas J. Knight* at the time of his death? The evidence is upon the record, and it satisfies us that his domicil was *Brookville,* in this state. His boyhood was spent in *Brookville.* When a young man, he went to *Cincinnati* to learn a trade. In 1838, or 1839, he went to *Natchez, Mississippi,* and engaged in business there with a brother. About 1842, he returned to *Brookville;* said he designed to make it his permanent abode; owned real estate there, and purchased and collected materials for building; voted at elections;

interested himself in politics, and the affairs of the town, as a citizen; said he did not intend to return to *Natchez*. He was an unmarried man. In the fall of 1843, he became insane; was sent to a hospital in *Cincinnati* for treatment; and died there in 1844.

His domicil, then, being at *Brookville*, his personal estate, (which that in the hands of both administrators was,) no matter where being, was distributable according to the law of *Indiana*. Story's Conflict of Laws, s. 481. —2 Kent's Com. 429.—Wheaton's International Law, 188. And see R. S. of *Indiana*, p. 551. Hence the half-blood was entitled to share equally with the whole, in this entire estate, and the Court in *Mississippi*, as it assumed the distribution of the fund there, instead of remitting it to the principal administrator here, should have been governed in that distribution by our law. That Court having, however, acted otherwise, probably upon the ground that it was not shown there that the deceased, *Knight*, had changed his domicil to *Indiana*, it remains but to be determined whether we can, in any manner, notice the distribution of the fund made in *Mississippi* in deciding the cause before us. We do not regard the present petitioners as parties to the proceedings for distribution in that state, and, hence, they are not, in our opinion, bound by them. We, then, can regard the distribution there only as a fact proved in this cause showing, that five of the six distributees of *Knight's* estate, have severally received a larger sum than now remains for distribution. We might so notice the fact, had the distribution been made by the administrator there, or here, in determining what should be done with the residue of the estate. Suppose the heirs of the whole blood were applying here for the distribution of this fund, and the fact were shown that they had severally received from the administrator more than their respective shares. Would not the Court act upon such showing, and attempt, in its action, to equalize the fund among all? So, should these petitioners receive the 300 dollars in question, and then go to *Mississippi* seeking to obtain a reversal of the proceedings there, or to obtain,

in any manner, their proportionate share of the whole estate, they would, and should, be charged with these 300 dollars.

We see no objection to allowing the petitioners the 300 dollars in the hands of *Matson*.

*Per Curiam.*—The decree is reversed. Cause remanded to the Court below to make the allowance accordingly.

*J. D. Howland*, for the plaintiff.

*G. Holland*, for the defendant.