Woodward *v.* Woodward.

WOODWARD *v.* WOODWARD, Guardian.

*(Jackson.    May 9, 1889.)*

1. GUARDIAN AND WARD.    *Non-resident ward's age of majority.    Lex domicilii.*

   A minor domiciled in another State, and emancipated, under its laws, from all disabilities of infancy, can receive or recover, in the same manner as an adult, personal funds to which he is entitled by the law of his domicile, held for him by a guardian appointed and resident in this State, and administered under our laws.    *Lex domicilii* controls as to ward's capacity.

   Code  construed : § 3419 (M. & V.) ; § 2544 (T. & S.).

   Cases cited and approved : Robinson *v.* Queen, *ante,* page 445 ; 10 How., 93 ; 129 Mass., 243 ; 1 Hagg. Ecc. R., 273 ; 8 Irish Eq. R., 444.

2. DOMICILE.    *Of adopted minor child.*

   Domicile of minor orphan child, who has been adopted under laws of this State, is that of the adoptive parent with whom it resides.

   *Bona fide* change of domicile to another State by the parent effects a like change of the child's domicile.

   Code construed : § 4390 (M. & V.) ; § 3645 (T. & S.).

---

FROM   SHELBY.

---

Appeal  from  Probate  Court  of  Shelby  County. J.  S.  GALLOWAY,  J.

T.  J.  SEMMES  and  GANTT  &  PATTERSON  for  Petitioner.

CRAFT  &  CRAFT  for  Guardian.

Woodward *v.* Woodward.

FOLKES, J. · This is a petition by Rosa P. Woodward, filed in the Probate Court of Shelby County, against her guardian, Emmet Woodward, in which she seeks to have a settlement of his guardian accounts, and to have the balance in his hands found due paid over to her.

She alleges her domicile and residence in the State of Louisiana, and sets up and exhibits with her petition certified copies of the proceedings had in that State, whereby she has been emancipated from the disabilities of infancy, under and in pursuance of the statute of the State authorizing, in certain cases, the emancipation of persons who have attained the age of eighteen. The petition alleges that, in consequence of such decree, she is, under the laws of the State of Louisiana, of full age, and as such entitled to demand· and receive her estate.

It is shown that both her parents are dead; that her father died of yellow fever, intestate, in 1873, leaving several children, all of whom are now over twenty-one years of age except petitioner, and have received from their guardian their share of their father's estate; that defendant, Emmet Woodward, was appointed guardian for herself and brothers and sisters by the Probate Court of Shelby County shortly after her father's death; that there is now in his hands about $8,000 belonging to her, which he holds as such guardian; that shortly after her father's death, by proceedings duly had in the Probate Court of Shelby County, petitioner was adopted

Woodward *v.* Woodward.

by C. Dickman, the husband of her maternal aunt, under and in pursuance of the statutes of Tennessee in such cases made and provided; that such adoption was with the consent and approval of the defendant, Emmet Woodward, her regular guardian; that several years thereafter C. Dickman removed from the State of Tennessee to the State of Louisiana with the view of taking up his permanent abode there, and has ever since and still does reside there, the State of Louisiana being the State of his domicile; that petitioner, after her adoption, became a member of the family of C. Dickman, her adoptive father, and did remove with him and his family to the State of Louisiana, and has ever since resided there; that Louisiana is the State of her domicile, and was at the time of the judicial proceedings therein resulting in her emancipation. She alleges in her petition that it is her desire, and to her interest, to have and receive the estate coming to her from her said father as aforesaid, by reason of the fact that it is now in the hands of the guardian, only yielding her a revenue of six per cent., charged with the commissions, expenses, and costs incident to such gardianship, while she can readily obtain a permanent eight per cent. investment of her funds in the State of Louisiana, where that rate of interest is legal, freed from costs and expenses of guardianship. She insists that the State of Tennessee will recognize her majority as determined and fixed by judicial decree in the State of her domicile, and

would recognize as valid any receipt, discharge, or acquittance that she might execute to her guardian for her estate now in his hands; and that the Probate Court will order and direct a settlement of accounts, and the paying over to her the balance found to be due, so that the said guardian, and his sureties on his official bond, may be discharged from all further liability.

To this petition the defendant interposed a demurrer, upon the ground that petitioner was still a minor under twenty-one years of age; that the proceedings had in the Courts of Louisiana would have no extra territorial effect by reason of the want of jurisdiction in said Courts over the estate of the ward situated in Tennessee; that the proceedings had in Louisiana are unknown to the laws of Tennessee, and opposed to the policy of Tennessee law, and contrary to the interests of the citizens of Tennessee, and would, therefore, not be recognized in the Courts of this State; that the said guardian is lawfully in possession of said funds under the laws of this State, and has been guilty of no breach of duty in relation thereto; and that said petitioner, being a minor, cannot maintain this action in her own name.

The Probate Judge sustained the demurrer, and dismissed the petition. Petitioner has filed the record for a writ of error in this Court.

There are certain general principles which control the disposition of this case. They are, in the main, well settled; the difficulty lies in their ap-

plication to the particular facts of the case in
hand.

"It is elementary that every State has an in-
herent right to determine the status or domestic
or social condition of persons domiciled within its
territory, except in so far as the powers in this
respect are restrained by duties or obligations im-
posed upon them by the Constitution of the United
States." *Strader* v. *Graham,* 10 How., 93.

Again, the civil status is governed universally
by one single principle—namely, that of domicile—
which is the criterion established by law for the
purpose of determining the civil status, for it is
on this basis that the personal rights of a party
—that is to say, the law which determines his ma-
jority or minority, his marriage, succession, testacy,
or intestacy—must depend. *Udney* v. *Udney,* L.
R., 1; Scotch and Divorce Appeals, page 457.

It is not seriously controverted by counsel for
defendant that the judicial decree under which the
disabilities of minority were removed in Louisiana
had the same effect as though, by direct statute,
the age of majority had been fixed at eighteen, so
far as the status of minors domiciled in that State
is concerned. The main contention in this con-
nection being that, the domicile of origin of peti-
tioner having been in Tennessee, petitioner has ac-
quired and could acquire no domicile in Louisiana
by reason of her removal to that State by her
adoptive father.

Before considering the question of removal and

of the right of the adoptive father to acquire for his adopted child a new domicile, or, what is the same thing, the right or privilege of the adopted child to acquire a new domicile' with her adoptive father, let us settle, if we can, what would be the proper disposition of the case had the petitioner been born and ever after domiciled in the State of Louisiana. In such cases we regard it as well settled that under unquestionable principles of private international law one State will recognize and give force and effect in its own tribunals to the legislation of another State, in so far as it fixes the status and capacity of married women and minors. This is frequently spoken of as a principle of comity; and while it doubtless has its origin in considerations of comity, it has been so repeatedly and emphatically recognized by the Courts of all civilized countries that it is now thoroughly crystallized into rules and principles of private international law.

As is said in *Ross* v. *Ross*, 129 Mass., 243, in the elaborate discussion of the subject by Chief Justice Gray, "the status or condition of any person with the inherent capacity of succession or inheritance is to be ascertained by the law of the domicile which creates the status, at least when the status is one which may exist under the laws of the State in which it is called in question, and when there is nothing in those laws to prohibit giving full effect to the status and capacity in the State of the domicile.

" We are not aware of any case in England or America in which change of status in the country of the domicile, with the formalities prescribed by its laws, has not been allowed full effect as to the capacity thereby created of succeeding to and inheriting property in any other country, the laws of which hold a like change of status in a like manner, with a like effect, under like circumstances."

This principle is illustrated by the decree made *in re* Da Cunha, 1 Hagg's Ecc. R., page 237, where administration was granted in England, limited to the receipt of the dividend of a sum of English stock, to a Portugese lady who, by the laws of her domicile, was emancipated from the disabilities of minority, but was, by the English law, still a minor. It was held that she was entitled to receive and receipt for the dividend on said stock in England.

It is true, as insisted by counsel for defendant, that there is no elaboration of decision and of discussion made by the Judges in the disposition of this case, but this fact in no manner detracts from its force and effect as authority. It does settle and determine that a person of full age by the law of her domicile, though a minor by the laws of England, is entitled to receive and give a valid acquittance for property to which she is entitled in England; and such receipt, though confined to the dividend on the stock, is as conclusive of her right to act as a major as though she

had received the corpus of the property, the. dividend being all that she was, under the circumstances, entitled to. In Rule 32 of Dilcey, we find it stated that the capacity of a person' for the alienation of movables depends, so far as the question of infancy or majority is, concerned, on the law of that person's domicile. So *in re* Hellman's will, reported in L. R. 2 Eq. 363, Lord Romilly, the Master of the Rolls, authorized the payment of a legacy to a minor aged 18, because she was of age according to the laws of Hamburg, where she was domiciled. The case is stated thus: "Hellman being domiciled in England, by his will, bequeathed the sum of 250 pounds to each of the two children of Charlotte Hilsig; these children were a daughter aged 18, and a son aged 17, both residents and domiciled in' Hamburg. According to the law of Hamburg, girls became of age on completing their eighteenth year; boys on completing their twenty-second. The Master of the Rolls said: "I am of opinion that the legacy to the daughter, who is of age according to the laws of Hamburg, may be paid on her receipt. The legacy to the son may be paid on his attaining the full age according to the English law, or according to the law of Hamburg, whichever first happens."

It is suggested, however, in response to this case, that the fact that the property going to the minor was by the will given to the minor by name, is indicative of the purpose to have the same paid over to the minor, according to the law of the place of her domi-

cile, where her majority was reached at an earlier age than in England, and that for this reason it should not be controlling in a case where the property was inherited generally in one State, where twenty-one is the lawful age, and the full age at an earlier period is had by reason of the domicile in another State.

We cannot appreciate the force of this suggestion. The Court, in disposing of the case, indicates in nowise that its judgment or conclusion was influenced by any such consideration, and, so far as the case goes, it is merely an announcement, and application of the general principles contended for by petitioner. Had any special regard been given to the fact that property was devised by will, instead of passing by law, it would have been more reasonable to have supposed that the testator intended it to be paid over according to the law of his own domicile, requiring guardians to receive and receipt for the fund devised to minors. That the Court gave no attention to such considerations, is shown by the order made with reference to the boy, in directing that the fund should be paid to him when he attained his majority, either under the law of England or under the law of his domicile, whichever first happened.

This Court has recognized the doctrine contended for by petitioner in the case of *Robinson* v. *Queen,* decided at Nashville and reported on page 445 of this volume, where it is held that the judicial proceedings, under the laws of the State of

Kentucky, emancipating married women from the disability of coverture, would be recognized and enforced in this State to the extent of allowing an action to be brought and maintained in the Courts of this State against such married woman, on a note made by her in the State of Kentucky as surety for her husband, clearly recognizing that her status as a person *sui juris* fixed by judicial proceedings in the State of her domicile, would have full force and effect in this State.

To the same effect is the text in Wharton's Conflict of Laws, Section 114, where the learned author says:

"A foreigner who is capable of business at his domicile must be recognized as so capable by our laws, even though if domiciled among us he would be incapable."

A near analogy to the present case, with reference to the recognition in one State of the status fixed by the law of the domicile is to be found in the case of children born out of wedlock, but made legitimate afterward according to the laws of their domicile, by the subsequent marriage of their parents. They are deemed everywhere legitimate for the purposes of inheritance, etc. *Andrews* v. *Andrews*, L. R. 24, Chan. Div. 637; *Miller* v. *Miller*, 91 N. Y., 315; *Scott* v. *Ney*, 11 Louisiana Ann., 232. This doctrine is generally subject to exception concerning real estate, which is governed by the *lex rei sitœ*.

The law of divorce also furnishes a close anal-

ogy. Thus a divorce in a foreign jurisdiction for a cause which is not competent in the state of marriage, is recognized as valid in the latter if the former had jurisdiction of the parties for the purposes of the suit. *Sewall* v. *Sewall*, 122 Mass., 158; *Clark* v. *Clark*, 8 Cushing, 385; *Barber* v. *Root*, 10 Mass., 260.

In *Stephens* v. *McFarland*, 8 Irish Eq., Rep., 444, we have a case where a minor was insolvent in Southern Australia, by the laws of which a minor could be so adjudged; his assignee attempted in Ireland to obtain the real and personal property that passed to him under his father's will. The bill was demurred to and the demurrer overruled, the assignee being adjudged to have the title of the property coming to the insolvent minor.

The converse of the present case is found in Kohne's estate, 1 Parson's Select Eq. Cases (Penn.), 399; the direct point was that the power of attorney of a minor, who had not reached her majority by the law of her domicile, would not be recognized in Pennsylvania, although by the law of Pennsylvania she was then of full age. The Judge delivering the opinion said, among other things, "that according to our law, in common with those of the civilized world, questions of minority and majority, in all controversies respecting personal estate, are to be determined according to the laws of the country in which the minor held his actual domicile, whether *natural* or *acquired.*"

See Story's Conflict of Laws, Secs. 64, 65, 66, and 69.

. Pothier states the rule thus: "The change of domicile delivers persons from the empire of the laws of the place they have quitted, and subjects them to those of the new domicile they have acquired."

Mr. Justice Story, after presenting the several views of some of the civil law writers who discuss the subject, says, at Sec. 71: "Boullenois himself does not hesitate to declare the general principle to be incontestable, that the law of the actual domicile decides the state and condition of the person, so that a person by changing his domicile changes at the same time his condition."

The effect of the statute of Louisiana, under which the disabilities of this minor were removed, has been adjudged by the highest Court of that State.

Thus, in 36 La., Ann., 250, it is said: "It places the minor thus freed on the same plain with the major, and invests him with identically the same rights, and subject to equal responsibilities. In other words, instead of leaving him subject to the operation of the general law, and making him wait until he is twenty-one years of age, it virtually and in effect fixed and established his majority at an earlier period of life—that is, at any time when he shall have passed the age of eighteen years." So fully is his majority established that he is capable of filling the office of adminis-

trator, just as if twenty-one years of age. 12 La., Ann., 155. Under this legislative emancipation the party's disabilities of infancy are all removed. 6 Robinson, 429; 9 La., Ann., 155; 36 La., Ann., 250. He is estopped by it, and those dealing with him need look no further than his free papers. 36 La., Ann., page 616.

The case of *Galbraith* v. *Buner*, 65 Mo., 349, urged by counsel for defendant as furnishing strong authority for their contention here, is not, in our opinion, entitled to the weight insisted upon. The case is extremely brief in its discussion, and assumes the very point in controversy, without reference to the various authorities bearing thereon.

Mr. Wharton, in his work on Conflict of Laws, at Section 114, says of this case that it is "exceptional" and "arbitrary." Moreover, it may be distinguished from the case now before us in this, that the proceedings in Arkansas, the State of domicile of the minor, seems to have had for its object the emancipation of the minor only *pro tanto*—that is to say, the minor's disabilities were removed to the extent of authorizing him to go into the State of Missouri and there collect and receipt for the particular fund in the hands of his Missouri guardian.

It was not an out and out removal of all the disabilities of minority, but a special commission authorizing an incursion into the State of Missouri for the purpose of receiving and receipting for a particular fund. The Arkansas statute is

Woodward v. Woodward.

not before us, and we only know its contents by the statement thereof, found in this Missouri case, from which it is apparent that it differs widely from the broad and comprehensive proceedings in Louisiana, whereby the petitioner in the case at bar was thoroughly and entirely emancipated from all disabilities, and her status fixed as a major in Louisiana, from which she claims the right to have her status recognized in other sovereignties.

So far we have traveled a broad and well-defined road, from which there is no variableness nor shadow of turning, every step of which is marked by well considered authority of the highest repute.

Let us see, now, what is the effect of petitioner's removal to Louisiana from Tennessee. There is certainly a want of authority directly on the point as to the right of one who has adopted a child to change its domicile. It is settled, however, that the father can change the domicile of his child, as also a widowed mother, by acquiring for themselves in good faith another domicile and carrying with them the child as a member of their family. It was held in the case of *Lamar* v. *Micou*, 114 U. S., page 223, that minors whose father and mother were both dead, removing in good faith from one State to another in order to live in and become a member of the family of their grandmother, acquired her domicile. This case goes further than we would feel at liberty to go, and we cite it merely as instructive. With us it has been held that a regular guardian cannot change

ward's domicile, and of course the minor himself cannot change it.

Now, under our statute, Section 4390 (M. & V. Code), with reference to the adoption of children there is no limitation whatever upon the power and parental relation that is thereby assumed toward the child so adopted, except that the person making the adoption shall not inherit from the child. The expression of one inhibition is an exclusion of all other inhibitions. The language of our statute is as follows, Section 4390:

"The effect of such adoption, unless especially restrained by the decree, is to confer upon the person adopted *all the privileges of a legitimate child* to the applicant, with capacity to inherit and succeed to the real and personal estate of such applicant as heir and next of kin, but it gives to the person seeking the adoption no mutual rights of inheritance and succession, nor interest whatever in the estate of the person adopted."

One of the privileges of a legitimate child is to acquire a new domicile for itself, when its father acquires one in the place to which they have removed. Here the adoptive father had, unquestionably, the right to carry the child, as a member of his family, to his new home. Is she to be held to submit to removal from the State of Tennessee, and yet deprived of the privilege of acquiring a domicile in the State to which she is removed?

It is a privilege, and one which might be of great advantage and benefit to a child, under many

circumstances, that readily suggest themselves. Are we in a strained effort to protect petitioner from what we can imagine may be an evil to her, to deprive her of the privileges which her relationship to the adoptive father give her under the statute?

And here it may be asked, how could we expect the Courts of Louisiana to recognize the status of *heir,* which the proceedings in Tennessee stamped upon her when she was domiciled here, were we to refuse to recognize the status of *full age,* which the proceedings in that State have stamped upon her?

Under the law that would be established if defendant's contention here were to prevail, and the *lex talionis* be applied, the Courts of Louisiana would refuse to recognize petitioner as the heir of her adoptive father, her only claim thereto resting upon the *status* given by the laws of Tennessee.

It is difficult to see, upon any rule of construction, or of policy, why all the powers possessed by a natural father should not be exercised by him, who, by adoption of a minor, assumes the relationship of parent. It must be remembered that in the case at bar there is no question or suggestion as to the perfect good faith in the change of domicile made by the adoptive father.

Mr. Jacobs, in his work on Domicile, treating of the subject of adoption, says: "By adoption, as it is practiced in many of the States of this Union, the adopted child passes into the family and under

the control of the person or persons adopting him,
and in his relations with them enjoys most of the
rights, and is subject to most of the duties, which
belong to a child born in lawful wedlock. It
would seem to follow that such children, upon
adoption, would remain as his in the domicile of
his adoptive parents, and that his domicile would
follow theirs throughout his infancy in the same
manner as if he were their child by nature."

The author adds, however, "but reasonable as
this conclusion appears, the writer has not been
able to find any authority decisively in point."
And we add, that neither reason nor authority has
been found to the contrary.

"The Roman law, under which adoption was ex-
tensively practiced, is silent with regard to its ef-
fect upon domicile, although it treats of its effect
upon origin, imposing upon the adopted son double
citizenship, viz., both that of his father and that
of the person adopting him. This rule was doubt-
less due to the desire to prevent a person from
exchanging the more grievous burden of one
country for the lighter burdens of another. * *
Probably the explanation of the silence of the
Roman law in regard to the effect of adoption
upon domicile is found in the fact that by that
law the domicile of the child did not necessarily
follow that of his father by nature, and hence,
would not follow that of his adopted father." *
* * Section 247. But in this country, where
the domicile of the child follows that of its father

by nature, we can see no reason why the domicile of the adoptive father should not be the domicile of the child."

Again, the author says: "In this country, in the Massachusetts case of *Ross* v. *Ross*, the language of Chief Justice Gray, in delivering the opinion of the Court, incidentally assumes that where the adoptive father has changed his domicile from one State to another, taking with him his adopted child, the domicile of the latter is thereby changed. In Foley's estate, in the Philadelphia Orphans'· Court, a briefly reported case, the question was as to the distribution of the personal estate of the minor. Dwight, Judge, said the deceased was a minor at the time of her death in this city. Mary Hamblet, who had adopted her under the Massachusetts statute in 1858, was then, and also at the time of the decedent's death, domiciled in that State. So, too, Thomas Quinn, the father of the minor. In either case, we think the minor also had her domicile in Massachusetts, and he then proceeded to distribute the fund according to the Massachusetts Law." Section 248.

Jacobs, at Section 32, says: "The validity of an act of adoption, and the legal status of parent and child resulting therefrom, depends upon the *lex domicilii* of the parties to it at the time it occurs."

In the absence of authority to the contrary, and upon principle and from analogy, we are constrained to hold that one who has adopted, in good faith, a child in this State, under the laws of this

State, removing to another State in good faith, acquiring a new domicile there for himself, carrying with him his adopted child, gives to such child a domicile in such State, the domicile of origin giving way to the domicile of choice made for it by its adoptive parent so long as it remains a minor. Of course it is needless to say that when the child attains its majority it can then resume its former domicile of origin, or retain the domicile acquired by the change through the act of its adoptive parent. The petitioner in the case at bar is now, by the law of her domicile, a major, and by her petition in the proceedings in the Louisiana Court, resulting in her emancipation, declares Louisiana the State of her domicile, and in the petition filed in the Probate Court of this State, after the removal of her disabilities, again solemly declares her domicile in that State; so that, independent of the question as to whether the removal to Louisiana by her adoptive father and his acquiring domicile there *ipso facto* changed her domicile, it might be said that her declarations and conduct after the removal of her disabilities by the laws of Louisiana, her domicile is certainly in that State.

With the question of change of domicile settled, we, upon authority and principle, hold that she has the right to receive from her guardian in the State of Tennessee funds coming to her in consequence of her majority by the law of her domicile. In this connection it may be remem-

bered that a capacity to take and to have differs from a capacity to do and contract. In short, "a capacity to hold, from a capacity to act," as was said by Mr. Chief Justice Gray in the case of *Ross* v. *Ross, supra.* We do not understand that, with the matter of removal and adoption out of the way, there is any serious question that a person of full age in Louisiana could receive and recept for property belonging to such minor in this State. The receipt in such case, accompanied with a discharge, is a contract. There are any number of cases holding that a person who is of full age by the law of their domicile will be held bound by any contracts made by them in another State, where they would not otherwise be of age under the laws of such other State. It is true that it has been held that where a person is of age in the State where they make a contract, though not of full age in the State of their domicile, they will be held bound by their contracts in the State where the contracts were made. This apparent exception to the general rule that the law of domicile fixes capacity, is predicated upon the idea that every State must protect its own citizens from the wrongful acts of the subjects of other States; and while it will always recognize *capacity* as furnished by the law of domicile, it will not always recognize *incapacity* where the person is capable under the law of the State where the contract is made, where it would affect injuriously our own citizens. Authorities upon this aspect of the case might be

multiplied, but the law as here stated is too well settled to render such citations necessary.

It only remains to determine whether there is any thing in the statutes of this State requiring guardians to hold funds in their hands until the ward attains twenty-one years of age, that militates against the enforcement of the conclusions we have already reached. On behalf of the defendant, it is insisted that the language of the statute in the regard above mentioned is as imperative as would be a provision in the will, or other instrument creating an estate, wherein it was directed that the trustees should hold the fund until the beneficiary should attain the age of twenty-one years. It would be competent for the Legislature to pass an Act impressing such a trust upon funds in this State, without regard to the laws of the State of the domicile of the ward. But does the statute in question do more than provide for wards domiciled in our own State? Is it aimed at non-resident wards? We do not so read nor understand our statute. We consider that the reference to the age of twenty-one years is for Tennessee wards, and is not for the purpose of fixing arbitrarily that particular age at which the guardian shall settle with wards domiciled in other States, but that it uses that age in consequence merely of the fact that under the law of this State a party is a minor until that age is attained, and that the statute, therefore, must be read as though it had merely provided that the guardian should

settle when the ward attained his majority. The statute referred to by counsel for defendent as fixing the age of twenty-one as the earliest period at which a Tennessee guardian can be called on to settle, does not declare a trust in the hands of all guardians until the ward attains twenty-one, as is argued.

This statute is to be found at § 3419, and is as follows:

"Every minor, upon attaining the age of twenty-one years, and every female ward, when she is married, upon the receipt of money or estate due either, shall receipt the guardian for the same, in the same manner as legatees, distributees, or others interested in the distribution of estates."

The next section provides for the keeping by the Clerks of the County Court of well-bound books in which such receipts shall be recorded. These are the only sections in Article IX., Chapter 2, of the Code. The title of the Article is, "Wards' receipt on *coming of age,* or marriage."

Here is certainly nothing showing an imperative policy, or any other policy, that this State proposes to set up for guardians in this State as to funds in their hands belonging to wards everywhere. It is merely a provison aimed at and operating upon the ward, requiring him to give a receipt "on coming of age," "or marriage," and providing for the recording of such receipt.

The word "twenty-one" happens to be used in the statute merely because that is the age of ma-

jority at common law, which is the law of this State on that subject—there being no statute declaring it—and the word "twenty-one" is used as synonymous with "full age," or "coming of age," as shown by the title to the Article, and as is further shown by § 3358, under the same Chapter—the title to which is "Guardian and Ward," and Article I., the title of which is, "Who May be Guardian"—where it enacts that such person who fails to deliver up effects of the ward "upon majority or marriage," is guilty of a misdemeanor. Showing that the terms are used convertibly. This is too plain for citation of authority or rules of construction; but it happens that *in re* Kohne's Estate, 1 Parson's Select Equity Cases, p. 399, we have an adjudication that the terms "arrival at twenty-one years," and "arrival at full age" are synonymous, and convey to the mind identically the same idea.

So that there is nothing in our statute fixing twenty-one years as the age at which a guardian shall settle with wards who are of full age in the State of their domicile. The only provisions on the subject are the two referred to, to wit: that the ward, on coming of age, shall give a receipt; and that if a guardian fails to turn over property to ward at his "majority," or "her marriage," he is guilty of a misdemeanor.

So that under our law he is required to settle when ward is of full age; and under the *jus*

*gentium* the petitioner is of full age, and he must settle.

The enforcement of this rule of private international law only requires that the common law age of majority of this State shall give way to the age of majority, as fixed by the law of the domicile of the ward, unless there be something in our statutes or decisions which are to be understood as indicative of a policy or purpose to enforce the particular law, without regard to the rules of private international law, which asks its suspension in favor of the *lex domicilii.* There is nothing in our law on the subject in hand upon which can be predicated the demand that the *jus gentium* shall not prevail.

Under the view we take of the law governing this case, the petitioner has attained her majority under the laws of the State of her domicile, and this Court, recognizing the status of capacity as thus fixed by the law of her domicile, will declare her of full age, so far as her right to demand and receive from any one having property in their possession belonging to her, to which she would be entitled upon attaining full age in this State.

In other words, being of full age in Louisiana, the State of her domicile, she is of full age in this State, under the principles of private international law obtaining in such cases.

Let the judgment be reversed, and the case remanded for further proceedings.