1, 2.

---

## MILLER *v.* BODE, ADMINISTRATOR.

[No. 11,476. Filed May 29, 1923. Rehearing denied October 3, 1923.]

1. ACTION.— *Challenging Administrator's Account.— Code.*—A proceeding challenging the correctness of an administrator's account is not a civil action, and the provisions of the Code are not applicable. p. 343.

2. EXECUTORS AND ADMINISTRATORS. — *Challenging Administrator's Account.—Objections.—Statutes.*—Under §2913 Burns 1914, Acts 1883 p. 160, the proper method of challenging the correctness of an administrator's account, as exhibited in his report, is to file objections thereto, specifically pointing out the alleged errors. p. 343.

3. EXECUTORS AND ADMINISTRATORS. — *Challenging Administrator's Account.—Powers of Court.—Finding.—Conclusions.*— Where the correctness of an administrator's account is contested the court has an inherent power to make special findings of facts and to state conclusions of law thereon. p. 343.

4. DESCENT AND DISTRIBUTION.—*Proof of Heirship.—Statute.*— One who desires to make proof of heirship and establish his title to a share in the surplus of the estate, pursuant to §§2912, 2928 Burns 1914, Acts 1883 p. 160, should not file objections to the correctness of the account but file his petition, averring therein his relation to the decedent, and all other facts neces-sary to establish his right to participate in the fund for dis-tribution. p. 344.

5. DESCENT AND DISTRIBUTION.—*Administrator's Final Report.— Conclusions.—Effect.—Liability.*—The statement in the final re-port of an administrator that he is informed and believes that a certain person is not entitled to any part of the fund has no legal effect, since the validity of the claim may be adjudicated only by the court, and where the administrator assumes to determine for himself the rights of those claiming to be heirs, he does so at his peril. p. 344.

6. EXECUTORS AND ADMINISTRATORS.— *Final Report.— Account-ing.—Objections.*—A claim that the administrator should have charged himself with a certain sum of money received from a railroad company because of wrongful death of decedent's father, and a claim that the administrator had failed to account for various sums received on account of personal property, are legitimate objections to the correctness of the administrator's account. p. 344.

7. EXECUTORS AND ADMINISTRATORS.— *Final Report.— Jurisdic-tion.—Objections.*—A claim that since the deceased was an inhabitant of another state at the time of death, distribution should be according to the laws of such state, and that the claimant be adjudged an heir at law, *held,* not a legitimate objection to the correctness of the administrator's account. p. 344.

8. DOMICILE.—*Child cannot Change.*—A child of tender years cannot of its own volition change its domicile from this state to a foreign state. p. 345.

9. DOMICILE.—*Adoption of Child.—Adoptive Parents of Foreign State.*—Where a child is adopted by persons living in a foreign state, the legal effect of the adoption of the child is to transfer the domicile of the child to that of the adoptive parents. p. 345.

10. DESCENT AND DISTRIBUTION.—*Personal Property.—Paternal and Maternal Grandparents.—Laws of Foreign States.—Stat-utes.*—Section 2927 Burns 1914, §2405 R. S. 1881, provides that where a decedent shall have died intestate, and at the time of death was an inhabitant of another state, the surplus arising from the personal property shall be distributed according to the laws of that state, or if administration of his estate be

pending in a foreign state, the surplus may by order of the court be paid over to the administrator appointed therein; §11,775, cl. 3, Comp. Laws Mich. 1915, provides that, "If the intestate shall leave no issue, husband, widow, father, mother, brother, sister nor child of brother or sister, his estate shall descend to his next of kin in equal degree," and such provision was made applicable to personal property by §13,913, cl. 6, Comp. Laws Mich. 1915; the sole heirs of decedent dying in Michigan were her paternal grandparents and maternal grandfather, *held,* that the residue of the estate of decedent be distributed to the three grandparents in equal shares. p. 345.

From Lake Superior Court; *Charles E. Greenwald,* Judge.

Action by William Miller against Herman P. Bode, administrator of the estate of Esther Vermilya. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*Seabright & Seabright, McCormick, Kirkland, Patterson & Fleming, Fesler, Elam & Young,* for appellant.
*Gavit, Hall, Smith & Gavit,* for appellee.

The controversy involved in this appeal arises out of the settlement of the estate of one Esther Vermilya, deceased.

On June 9, 1919, William Steinberg, a resident of Lake county, Indiana, was accidentally killed at Berwin, Illinois, by a train of the Chicago, Burlington and Quincy Railroad Company. At the time of his death Steinberg was a widower, his wife having died in the year 1918. He left surviving him his infant daughter, Esther, who was his only child. Herman P. Bode was duly appointed administrator of his estate by a court of competent jurisdiction in the county of which he was a resident at the time of his death. The administrator made a settlement with the railway company for wrongfully causing the death of William Steinberg, by which he realized a net balance, after the payment of attorney's fees, of $4,800. The administrator also realized

from the sale of decedent's personal property $2,258.64, and from the proceeds of a life insurance policy $200.

At the time of her father's death Esther Steinberg was staying temporarily at the home of her Aunt Minnie, her father's sister, in Hadley, Michigan. She remained with her Aunt Minnie a short time after her father's death and then went to the home of her Aunt Lena Vermilya, another sister of her father, in Flint, Genesee county, Michigan. This change in Esther's place of abode was due to the fact that her Aunt Minnie was a widow and had several children of her own, while her Aunt Lena was childless. On June 22, 1920, Orville J. Vermilya and his wife Lena Vermilya, by proceedings in the probate court of Genesee county, Mich., adopted Esther; and in the same proceeding the court ordered that her name be changed to Esther Vermilya.

On July 13, 1920, Esther Vermilya died, at Flint, Genesee county, Michigan; and in the following November, the superior court of Lake county, Indiana, appointed Herman P. Bode administrator of her estate. In due time the administrator of her estate filed his report in final settlement thereof. In that report he charged himself with the total net proceeds of the estate of William Steinberg, deceased, which remained in his hands on final settlement thereof. The report shows that after paying the costs of administration and inheritance taxes, the administrator had on hand for distribution $6,908.64. The report then recites that the decedent, Esther Vermilya, left surviving her, no father, no mother, no brother and no sister, but did leave surviving, her paternal grandparents, Frederick Steinberg and Henrietta Steinberg, and also her maternal grandfather, William Miller; and that the administrator is informed and believes that since the entire assets of the estate were derived from the paternal side, and

none thereof from the maternal side, the total amount for distribution should be paid to the paternal grandparents and none to the maternal grandfather.

The usual notice of the filing of the final report was given, and at the time fixed for the hearing the paternal grandparents and the maternal grandfather appeared. William Miller, the maternal grandfather, filed a document which he denominated "Exceptions and Objections" and a supplemental document of the same designation. In these documents he avers that as the maternal grandfather he is an heir at law of the decedent and entitled to share in the distribution of her estate. His objections to the administrator's account, as set forth in the same documents, are as follows: (1) By virtue of the law of Illinois, the administrator should have charged himself with $5,000 on account of the money received from the railway company; (2) that the administrator had failed to account for various sums received on account of personal property; and (3) that, since the deceased was an inhabitant of the State of Michigan at the time of her death, the distribution should be according to the laws of Michigan. He asked that he be adjudged an heir at law of the decedent and entitled to one-half the proceeds of the estate, and for all other proper relief.

At the close of the trial the court overruled the "exceptions," approved the final report, and ordered the administrator "to pay to the paternal grandparents of decedent, Frederick and Henrietta Steinberg, in equal parts, all moneys now in his hands as such administrator, and that William Miller, the sole maternal grandparent of the decedent, receive no part or portion of said fund." Miller's motion for a new trial was overruled, and he reserved exceptions to each adverse ruling. The errors assigned challenge the action of the

court:    (1) In approving the final report; (2) in overruling the objections; and (3) in overruling the motion for a new trial.

It should be stated also that one William R. Roberts, who had been appointed administrator of the estate of Esther Vermilya, deceased, by the probate court of Genesee county, Michigan, filed his petition asking that all the assets in the hands of Herman P. Bode as administrator of the same decedent, be turned over to him. It does not appear that any ruling has ever been made on that petition.

DAUSMAN, J.—The procedure adopted in this matter is so irregular and confusing that it should not go unnoticed.

The proceeding is not a civil action, and therefore the provisions of the Code are not applicable. *Brownlee, Admr.,* v. *Hare* (1878), 64 Ind. 311; *Conger* **1-3.** v. *Babcock, Admr.* (1882), 87 Ind. 497; *Dohle* v. *Stultz, Admr.* (1884), 92 Ind. 540.

The proper method of challenging the correctness of an administrator's account, as exhibited in his report, is to file objections (sometimes inaptly called exceptions) thereto, specifically pointing out the alleged errors. §2913 Burns 1914, Acts 1883 p. 160; *Christie, Exrs.,* v. *Wade* (1882), 87 Ind. 294; *Conger* v. *Babcock, supra; Swift, Admr.,* v. *Harley* (1898), 20 Ind. App. 614, 49 N. E. 1069.    Where the correctness of an administrator's account is contested the court has inherent power to make a special finding of facts and to state conclusions of law thereon; and that is an excellent way of reserving questions to be presented on appeal. *Swift* v. *Harley, supra; Taylor* v. *McGrew* (1902), 29 Ind. App. 324, 64 N. E. 651.

Proof of heirship has no legitimate connection with the accuracy or inaccuracy of the administrator's ac-

count. These two features are separate and
4. distinct. One who desires to make proof of his
heirship and to establish his title to a share in
the surplus of the estate, pursuant to §§2912, 2928,
2931, Burns 1914, Acts 1883 p. 160, should not proceed
by filing objections to the correctness of the account.
The proper procedure for that purpose is to file his pe-
tition, averring therein his relation to the decedent and
all other facts necessary to establish his right to par-
ticipate in the fund for distribution. *Sherwood,
Admr.*, v. *Thomasson* (1890), 124 Ind. 541, 24 N.
E. 334.

In the case at bar the controversy is in reality be-
tween Miller and the paternal grandparents. The
statement in the final report that the administra-
5. tor is informed and believes that Miller is not
entitled to any part of the fund, is merely an ex-
pression of his opinion and has no legal effect. The
validity of Miller's claim could be adjudicated only by
the court. Where an administrator assumes to
determine for himself the rights of those claiming to
be heirs and therefore entitled to participate in the
surplus for distribution, he does so at his peril. *Gless-
ner, Admr.,* v. *Clark, Admr.* (1895), 140 Ind. 427, 39
N. E. 544.

The first and second specifications in the documents
filed by Miller are legitimate objections to the correct-
ness of the account; but the third specification is
6, 7. not. It is apparent that these documents were
intended to serve a double purpose, viz.: to pre-
sent objections to the account and to serve as a founda-
tion for proof of heirship. The combination is obvi-
ously improper; but it was not challenged in the trial
court, and therefore we will consider the document in
its dual aspect.

The appellant has abandoned his objections to the

correctness of the administrator's account, and the only question left for our consideration is one of law, viz.: Is the maternal grandfather entitled to share in the estate?

The child Esther, being of tender years, could not of her own volition change her domicile from Indiana to Michigan. *McCleary* v. *Matson, Admr.* (1850), 2 Ind. 79; *Warren* v. *Hofer* (1859), 13 Ind. 167. See *Yale* v. *West Middle School District* (1890), 59 Conn. 489, 22 Atl. 295, 13 L. R. A. 161. But the legal effect of the adoption of the child was to transfer her domicile to that of the adoptive parents. It follows that at the time of her death she was an inhabitant of the State of Michigan. *Waldoborough* v. *Friendship* (1895), 87 Me. 211, 32 Atl. 880; *Washburn* v. *White* (1885), 140 Mass. 568, 5 N. E. 813; *Woodward* v. *Woodward* (1889), 87 Tenn. 644, 11 S. W. 892. See §874 Burns 1914, §829 R. S. 1881.

Our statute provides that, where a decedent shall have died intestate, and at the time of his death was an inhabitant of another state, the surplus arising from the personal property shall be distributed according to the laws of that state; or, if administration of his estate be pending in the foreign state, the surplus thus arising may, under the order of the court, be paid over to the administrator appointed in the foreign state. §2927 Burns 1914, §2405 R. S. 1881.

Certain sections of the statutes of Michigan, relating to the subjects of descent and distribution, were adduced in evidence, viz.: §11799, subdivision 6 of §13913, §11795, Comp. Laws 1915. No other evidence of the law of that state is before us. From that evidence it appears that subdivision 3 of §11795, *supra*, is the final word in this controversy. It is there declared that: "If the intestate shall leave no issue, husband, widow,

father, mother, brother, sister, nor child of brother or sister, his estate shall descend to his next of kin in equal degree    *    *    *."

This provision relates primarily to real property, but clause 6 of §13913, *supra*, makes it applicable also to personal property in the case at bar.

We conclude, therefore, that the residue of the estate of Esther Vermilya, deceased, should be distributed to the paternal grandfather Frederick Steinberg, the paternal grandmother Henrietta Steinberg, and the maternal grandfather William Miller, in equal shares— one-third thereof to each of them.

There is no controversy concerning any fact in this case and a new trial is not required.

The judgment is reversed, the cause remanded, and the trial court is directed to order the residue of the estate distributed in accordance with this opinion.