CASE 17—ACTION AGAINST TRUSTEE FOR SETTLEMENT—
Oct. 12.

# Phillips, Etc. v. Burton, Etc.

APPEAL FROM MARION CIRCUIT COURT.

1. TRUSTEE'S SETTLEMENT—COMPOUND INTEREST.—A trustee who has been faithful and diligent in the management of his trust, and who has made frequent statements of account to the beneficiary, is chargeable only with the interest—be it simple or compound— which he actually receives; and he is not to be charged with compound interest though his books of account fail to show a separate interest account.

2. SAME—COMPENSATION.—A trustee will not be precluded from charging a reasonable compensation for his services on final settlement by having made to the beneficiary frequent statements of account from which all mention of compensation was omitted.

3. SAME—INVESTMENTS APPROVED BY BENEFICIARY.—The beneficiary of a trust is precluded from objecting to an investment which met her approval when it was made.

W. J. LISLE FOR APPELLANT. (S. A. RUSSELL OF COUNSEL.)

1. The compensation allowed the trustee was excessive. It is three times as much as the trustee offered to charge his sister prior to the institution of the litigation.

2. The trustee mingled the trust funds with the funds coming to the beneficiary from her mother's estate, and it seems to us, therefore, that the funds were not managed in an ordinarily prudent manner.

3. It was error to compel the beneficiary to take the Wichita property. It was such an investment that no prudent trustee nor business man of any kind would have made.

Citations: Fleming v. Wilson, 6 Bush, 611; Greening v. Fox, 12 B. M., 190; Ky. Stats., sec. 4706; Citizens National Bank v. Jefferson, 88 Ky., 651; Lyme v. Bell, 7 Dana, 427; Richardson v. Spencer, 18 B. M., 465; Fidelity, &c., v. Glover, 90 Ky., 355; Durrett v. Com., 90 Ky., 312.

S. A. RUSSELL ON THE SAME SIDE.

Counsel argued the same questions of law asserted in the foregoing brief and cited in support of his contention as follows:

Phillips, &c., v. Burton, &c.

Brown v. Wheeler, 44 Am. Dec., 550; S. Pac. Ry. v. McMurtry, 83 Am. Dec., 322; Musselman v. McElhanny, 85 Am. Dec., 445; Davis v. Davis, 85 Am. Dec., 157; Chouteau v. Goddin, 90 Am. Dec., 462; Dickerson v. Knabb, Sneed, 320; Crow v. Brown, Sneed, 102; McAdams v. Hawes, 9 Bush, 23; Merriwether v. Lewis, 9 B. M., 179; C. & L. R. R. Co. v. Bowler, 9 Bush, 492; Farra v. Adams, 12 Bush, 517; Driscoll v. Mateer, 80 Am. Dec., 105; McMahon v. Sloan, 51 Am. Dec., 601; Genl. Stats., ed. 1888, p. 707, sec. 19; Myers' Supplement, p. 264; Kimball v. Redding, 64 Am. Dec., 333; Commrs. v. Walker, 38 Am. Dec., 433; Gray v. Fox, 22 Am. Dec., 508; Clark v. Anderson, 13 Bush, 111; Higgins v. McClure, 7 Bush, 381; Clay v. Clay, 3 Met., 548; Smith v. Smith, 7 J. J. Mar., 338; Jennings Exr's. v. Davis, &c., 5 Dana, 135; Greening v. Fox, 12 B. M., 187; McDowell v. Caldwell, 16 Am. Dec., 635; Clemens v. Caldwell, 7 B. M., 176; Meyers v. Myers, 16 Am. Dec., 648; City of Louisville v. Bank of U. S., 3 B. M., 138.

T. L. EDELEN ALSO FOR THE APPELLANT.

1. The trustee was liable for interest annually accruing by the terms of his bond.
2. The trustee was not entitled to compensation because his own testimony showed that he had not been faithful in the performance of his trust duties.

Citations:   Selleck v. French, 1 Conn., 32; s. c. 1 Am. Leading Cases, 610; Ten Broeck v. Fidelity Trust and Safety Vault Co., 88 Ky., 242; Mitchell v. Moore, 5 Otto, 587; McDowell v. Caldwell, 2 McChord Chan. Reps., 43; s. c. 16 Am. Dec., 635; Barney v. Saunders, 16 How., 535; Lape v. Jones, 12 Ky. Law Rep., 875; Robinson v. Pett, 2 Lead. Cas. in Eq., p. 551; Finck v. Rayland, 2 Dev. Eq., 141; Gilbert v. Sutliff, 3 O. St. Rep., ——; Reed v. Ryburn, 23 Ark., 47.

WM. LINDSAY FOR THE APPELLEES.

1. The fourth clause of the will of John A. Burton does not create such a technical trust as that the trustee is to be dealt with when he comes to settle his accounts as though he and his *cestui que trust* were to remain and did remain at arm's length during the existence and execution of the trust. The testator did not regard his daughter, Mrs. Phillips, as an incompetent.
2. She was entitled under the will to have the interest on her investments paid over to her annually, but her trustee might pay her more than the interest should she desire it and he was not obliged to pay her all the interest if she preferred to let a portion of it remain in his hands.

3. The trust was managed from its inception with the knowledge and concurrence of the beneficiary.

4. The evidence shows that the trust estate was managed with tact, fidelity and prudence.

5. The trustee was entitled to compensation and the compensation was not excessive.

6. The failure to charge compensation in his interlocutory settlements did not preclude him from compensation on a final settlement. O'Neil v. Touse, 14 Ky. Law Rep., 126.

J. P. THOMPSON ALSO FOR APPELLEES.

　Counsel discussed:

　1st. The proposition that the beneficiary had received all the interest to which she was entitled;

　2d. That she ought to be charged with the Wichita property because she assented to same, and

　3d. That the compensation allowed the trustee was due and reasonable.

SAM. T. SPALDING ALSO FOR APPELLEES.
　(Brief not in record.)

S. A. RUSSELL FOR APPELLANT IN PETITION FOR A REHEARING. (W. J. LISLE AND T. L. EDELEN OF COUNSEL.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

John A. Burton died in 1874, leaving a widow and two sons and three daughters. He made a will by which, in effect, the children took portions to which they were entitled under the laws of descent and distribution; and the only apparent reason for making the will was because the testator desired, seemingly, to give the widow something additional, and further desired to annex some restrictions to the devise to one of his daughters because her husband was not transacting business in his own name. The present controversy grows out of the provision for this daughter, and the clause as to her is as follows:

"Fourth. That portion of my estate that falls to my daughter, Eusebia Phillips, wife of J. G. Phillips, I wish placed in the hands of a trustee for her separate use and benefit, not subject to

the liabilities of her husband or any other person. The interest to be paid to her annually. No person to have control of her said estate, except her trustee, so long as he acts as such, who shall execute the usual bond for the faithful performance of said trust. She to be authorized to select said trustee, and not to continue longer than she may desire. Should her husband change his present manner of business, and do business in his own name, then, in that case, I should prefer, if she thought it best, to call upon her trustee for a settlement of his trust, and take charge in her own right of the amount of what might be in his hands as her trustee." Under the authority of the will, Mrs. Phillips selected her brother, Robert A. Burton, as her trustee, who acted as such for some twenty odd years; during the whole of that time, except a short while towards the end of this period, the trustee and his sister were on the most friendly terms, and the business was transacted without friction or complaint.

In the fall of 1896 Mrs. Phillips became dis-satisfied with certain notes held by her trustee for her, and in December of that year this suit was brought by her against the trustee and his sureties for a settlement of the trust estate. During the progress of the suit the trustee turned over to the beneficiary, under the orders of the chancellor, the entire estate claimed by him to be in his hands, asking what he deemed to be a reasonable compensation for his services as trustee.

The chancellor approved of the trustee's conduct in the management of the trust, and allowed him the compensation asked.

From this judgment Mrs. Phillips appeals.

Briefly stated, the grounds of her complaint are that the chancellor has accepted as correct, and has approved in

the main, the accounts of the trustee as kept by him, and as furnished by him to her for her inspection and approval from time to time from the beginning to the end of his trust, whereas, as she contends, the court ought to have made up the accounts by compounding the interest at annual rests; and further it is claimed by appellant that no compensation should have been allowed her trustee. Other minor complaints will be noticed later on.

As to the first complaint, it is to be observed that with respect to trustees there is no statutory provision in this State requiring the compounding of interest either annually or biennially. Nor is there any judicial decision establishing any fixed rule to that effect. On the contrary, a trustee is chargeable only with such interest as "he actually receives, or, as a faithful and prudent fiduciary, he ought, and therefore should be presumed, to have received." (Maupin's Ex'r v. Dulany's Devisees, 5 Dana, 594, [30 Am. Dec., 699].) The rule of a trustee's accountability for interest is stated in Clark v. Anderson, 10 Bush, 108, to be "that he is chargeable with the interest actually received, or with such as, in the prudent and faithful discharge of his duties, he ought to have received." It is stated in the text of the American & English Encyclopedia of Law (volume 27, p. 179), and supported by the authorities there cited, that "a trustee who exercises diligence and good faith in the custody of the trust funds is not chargeable with interest unless he has used them for his own profit, or has invested them so as to produce interest, or has suffered them to lie idle when they might have been invested, or has needlessly delayed settlement and surrender of the property." And further (Id. p. 190): "Good faith is at once the duty of a trustee and his protection. A trustee who acts in good faith is

treated with indulgence by the courts, and, in the absence of inexcusable neglect, misconduct, or fraud, will be relieved from responsibility for losses."

When the fiduciary mixes the trust fund ' with his own, neglects to settle his accounts, and when called upon, fails to show what disposition is, made of the fund, a decree is proper requiring him to pay interest, and allowing annual rests in the computation of interest.   Asay v. Allen, 124 Ill., 391, [16 N. E., 865].

When the trustee uses the fund in his own business, or so mixes it with his own as not to be able to show the profits of the trust fund, or is otherwise negligent in the execution of the trust, then interest at rests of a shorter or longer period, in the sound discretion of the chancellor, may be charged as a punishment for a viola tion of his duty, and as a measure of damages for undisclosed profits.   A trustee, therefore, who is faithful and diligent, and who executes the trust in accordance with the principles adverted to, has done nothing for which he may be punished; and such a trustee is chargeable only with the interest, be it simple or compound, which he actually receives, or which he might have received by the exercise of reasonable diligence.   He may not bury the talent committed to him, and render unto his master only his own without its legitimate gain.

It is conceded in the case at bar that the trustee has accounted for large sums of interest.   Whether he is to be charged with additional interest, and which he insists he did not receive, depends upon the fidelity, honesty, and diligence displayed by him in the conduct of the business, for the twenty-three years it was in his hands.   It appears that the total estate belonging to his sister which came to

his hands amounted to some $32,000. A large part of this he did not get until in 1882, 1884 and 1888. He paid out in 1876, and shortly thereafter some $5,000 for a home for the beneficiary, and this much of the trust fund became unprofitable. He likewise paid out in 1886 about the same amount for a home for Mrs. Phillips' daughter. Other assets in his hands were unprofitable. The personal expenses of Mrs. Phillips were also considerable. In round numbers, it is shown that real estate of the value of $13,-000 has been purchased for the beneficiary; that the further sum of $13,500 has been expended for her during the period of the trust, besides some $3,000 for her son at her request; and, further, that before this suit was brought the trustee offered to turn over, and has since turned over, in cash notes or assets of the estate, about $25,000,—a total of some $54,000, when the active fund for loan in his hands for a large part of the time was less than $20,000. The interest accounted for by the trustee is something over $20,000, and no part of the principal has been lost during the whole time, save a small loan of less than $400, and this the chancellor charges to the trustee.

When we consider the financial condition of the country during a portion of this time, we think this showing by the trustee is a remarkably successful one.

It appears, further, that, beginning in 1876, the trustee made eight statements, or partial settlements, which he submitted to his sister for her inspection, and which she examined and approved. The material parts of the last settlement submitted to her, and which, after an examination, she approved in writing, are as follows:

"A Settlement of the Accounts of R. A. Burton as Trustee for Mrs. J. G. Phillips, made on the 1st day of April, 1895. Amounts paid out by him since last settle-

ment, made January 2nd, 1892:   Vouch. No. 1.   Alberts &
Lusk, Louisville, $16.   [Here follows a list of 77 vouch-
ers, aggregating the sum of $5,114.81.]   Settlement of ac-
counts paid out for Mrs. Phillips:  . . .  I still hold
30 shares in Citizens' National Bank, cost $4,500.  I
still hold two Taylor county bonds, face value $2,000.
I hold deed for real estate bought by me in Wichita, Kan-
sas, cost $5,100, one-half of which was paid for by me, as
trustee for Mrs. Phillips, as an investment, with her ap-
proval, $2,550.   I hold deed for Lebanon Home property,
cost $5,605.55.   I hold cash notes, with interest counted
to April 1st, 1895, amount to the sum of $18,549.19.   I
have to my credit in bank April 1st, 1895, $454.55.   Total,
$33,659.29.   Recapitulation:

Amount paid Mrs Hundley .................$ 5,285 00
Voucher No. 77, amount paid J. B. Phillips....   3,000 00
Amount paid since last settlement, as shown
      by list of vouchers filed, from 1 to 76, in-
      clusive, made January 1, 1892 ...........   2,114 81
Amount in my hands, as shown above ........  33,659 29
                                             ──────────
                               $44,059 10"

    The items as to Mrs. Hundley and J. B. Phillips repre-
sent the home bought for Mrs. Phillips' daughter, and the
drug business bought for her son.   The former statements
or settlements submitted to Mrs. Phillips were equally
explicit, and we have no sort of doubt that she fully under-
stood them, and was gratified, as the proof indicates, at
the fine showing made of the profits of her estate.   The
competency of Mrs. Phillips to comprehend these settle-
ments, and to approve them and the manner in which her
business was being conducted, is not seriously denied.   She
was 33 years of age when the trust was undertaken; was a

woman of intelligence and business capacity,—a "shrewd
financier," as one witness puts it. Her father, it is clear,
did not interpose the trustee between her and her property
on account of any lack of business capacity on her part,
nor were there any remainder-men to be protected. In
fact, she was authorized to select her trustee, "and not
to continue longer than she might desire;" and, should
her husband change his way of doing business, then the
father preferred, if the daughter concurred, that a set-
tlement be had with the trustee, and the trust be termi-
nated. The trustee and his sister lived in the same vil-
lage. They talked freely and often about her affairs. And
while we do not regard these statements, or "settle-
ments," as they are termed, on their face as working any
estoppel against her in effecting a correction of mistakes,
the fact of her acquiescence, or, rather, of her active ap-
proval of them, becomes an important factor with the
chancellor, when asked by her to punish her trustee by
annually compounding the interest on the trust funds in
his hands, because to do so would insure her a larger re-
turn of interest than the large return the trustee had al-
ready accounted for. The punishment should be inflicted,
say counsel, because the settlements do not show to whom
the money was loaned, nor for how long, and therefore
there is no separate interest account. It is true there is
no such account. But it is also true that to have kept
such an account would have been a source of very great
difficulty. In order to prevent the fund lying idle, very
small amounts were sometimes loaned, and the transac-
tions were very numerous. When a note with its interest
was paid, the whole was deposited in bank to the credit
of the trust fund, and loans made of such sums as could
be gathered together.

The trustee kept the trust funds separate from his individual funds, and kept his accounts in bank in the name of "R. A. Burton, Trustee for Mrs. Phillips," or "R. A. Burton, Trustee," and he testifies that every dollar of cash coming to his hands belonging to the trust estate was deposited to his credit as such trustee. He files these bank books and the checks and vouchers, showing the entire course of the business, although they do not generally show from what source the money came, nor do the entries of deposit show what is interest or what principal. It is shown that in some instances the trustee, himself a man of means, furnished the trust fund money with which to make up a sum sufficient to meet some demand for a loan, and this advancement would be paid back to the trustee out of trust funds or out of the cash notes. But these irregularities, if they may be so termed, do not occur sufficiently often to confuse the trust account. We think the books as kept, and the statements as made, sufficiently disclose the business to a person of ordinary intelligence, and nothing more explicit was necessary.

The beneficiary certainly is late in complaining of the way these books were kept or the business transacted. We are entirely satisfied that the trustee has accounted for all the interest he received, and that he has been diligent in keeping the trust fund at interest, and has collected as much as any diligent, prudent man could have collected, and has in all respects been faithful to his sister's interests.

As to the compensation of the trustee, it is shown that the amount he asks for—$300 per year—is entirely reasonable. No interest was allowed him on this, but credit was given him as of the date of the judgment below. It is

[ 7 ]

said no allowance should be made to him, because none was asked in the statements or settlements submitted to his sister. But this court and other courts have held that the making of a settlement not final, without asking an allowance, does not preclude the trustee from asking for his allowance at the termination of his labors as trustee. Albro v. Robinson, 93 Ky., 200, [19 S. W., 587]. Nor does the fact that the trustee, just before this suit was filed, agreed to take a less sum than he now charges, and far less than is reasonable and just to him, affect the question of his right to compensation or its amount.

We think, further, that the proof conduces to show that Mrs. Phillips consented to the Wichita investment, now complained of, when it was made, and approved of it afterwards. Her consent to it, approval of it, and long acquiescence in it without complaint preclude her from complaining now. Mitchell v. Berry, 1 Metc. (Ky.), 602-619; Story, Eq. Jur., sec. 322; Blair v. Com., 93 Ky., 493, [20 S. W., 434]. The judgment is affirmed.