MEIER ET AL. *v.* UNION TRUST COMPANY OF INDIANAPOLIS, EXECUTOR.

[No. 13,973. Filed May 1, 1931. Rehearing denied August 13, 1931. Transfer denied December 11, 1931.]

458

*William Bosson, Jackson & Hinchman* and *Merle N. A. Walker,* for appellants.

*Baker & Daniels,* for appellee.

NEAL, P. J.—John A. Kurtz deceased November 5, 1913. His will was probated six days thereafter in the Probate Court of Marion County, Indiana. The Union Trust Company of Indianapolis was appointed by the terms of the will as executor and trustee thereunder, and subsequently qualified. On November 26, 1926, the appellee filed its first and final report; the appellants filed objections thereto. On change of venue, the trial was had in the Hancock Circuit Court. The court made a special finding of facts and stated its conclusions of law thereon. The errors assigned challenge separately the conclusions of law numbered one to eight inclusive, the overruling of the separate and several motions of appellants for a *venire de novo,* and the overruling of the separate and several motions for a new trial.

The estate of John A. Kurtz consisted of personal property inventoried as follows: "Debts, dues, demands, etc.," at $118,055.46, and tangibles at $29. The testator owned at the time of his death three parcels of real estate: (1) Homestead in Woodruff Place, Marion County; (2) a duplex in Woodruff Place; (3) two lots and buildings on Northwestern Avenue in Indianapolis.

The testator in his lifetime was engaged in the manufacturing business, manufacturing magnetos under the name of "Hercules Electric Company." The company

was incorporated in 1906, under the Nevada law. John A. Kurtz caused the stock of the company to be issued to himself, with qualifying shares, one each, to his son, Stewart H. Kurtz, one of the appellants, and one to the testator's brother, William E. Kurtz, also a manufacturer. William E. Kurtz was actively engaged in the business of the Hercules Electric Company, especially while his brother John, the testator, was ill. Chauncey D. Meier, son-in-law of the testator, was vice-president of the Hercules Electric Company from 1909 until about July, 1920, and was actively engaged in the work during that time at the factory.

The appellee, Union Trust Company, by the will was nominated executor thereof, was so appointed executor and trustee, and, as such trustee, the entire estate was bequeathed and devised to it. The Union Trust Company exercised the duties of both offices continuously from November 11, 1913, until the summer of 1926, when it sought to resign, in the Marion Probate Court, as trustee, but, by some mischance, the resignation did not become a matter of record in the court. The Union Trust Company served as such executor and trustee until November 26, 1926, when, both as executor and trustee, it filed its first and final report in the probate court. On October 22, 1926, on the application of the appellants, the Marion Probate Court appointed appellant Stewart H. Kurtz, only son of the testator, trustee of the trust estate created by the will and he immediately qualified. When the appellee filed its first and final report, it delivered to the clerk of the probate court all money, securities and all other tangible property belonging to the estate of John A. Kurtz, deceased, and, thereafter, Stewart H. Kurtz, as such successor trustee, receipted to the clerk for all the property except the "880 shares of stock in the Hercules Manufacturing Company."

The facts as found by the court may be summarized as

follows: As to all items of the report except five, the objectors, at the beginning of the hearing, stated in open court that the objectors would make no contention; the five objections are as follows: All matters relating to: (1) "Hercules" property and "Hercules" stock; (2) the sale of two parcels of real estate in Woodruff Place, Indianapolis; (3) compensation heretofore paid to the Union Trust Company; (4) compensation paid by the estate to the attorneys of the Union Trust Company; and (5) further compensation to the Union Trust Company and to its attorneys.

That the decedent, John A. Kurtz, at the time of his death, was a resident of Indianapolis, Marion County, Indiana; that he died testate November 5, 1913, and left surviving his wife, Katherine Blake Kurtz, and their five children, to wit, the exceptors, Stewart H. Kurtz, Mary J. Meier, Helen Douglas, Lila Kurtz and Margaret D. Zimmer, all adults; and that the decedent left no other child of his or any child of a deceased child of his surviving him.

The will of John A. Kurtz was dated and executed June 12, 1912, and was, on November 11, 1913, probated in the Probate Court of Marion County. Item 1 of the will directed that the executor pay all of the testator's just debts, the funeral expenses and the necessary cost and expense of administering the estate; Item 2 devised and bequeathed all of the testator's property and estate, real, personal and mixed, unto the Union Trust Company, of Indianapolis, subject to certain trusts and powers hereinafter mentioned, that is to say, the trustee "shall hold, manage and control all of the property for the purpose of making it produce income"; shall rent the real estate and shall receive all the rents, incomes and profits of all such trust property and estate; shall, from the income, keep up the repairs to the real estate and discharge all proper expenses necessary to the

proper management of the trust property and pay the whole of the net income to Katherine Blake, testator's wife, as long as she shall live; Item 3 is to the effect that, upon the death of testator's wife, and until the death of the last to die of the five children, the trustee shall pay the net income to the children in the proportions therein specifically set forth; Item 4 directs that, upon the death of the last to die of the six persons, the widow, four daughters and one son, naming each of them, "the trust hereby created shall at once cease and determine, and, immediately upon such termination, all of the said trust property and estate then held by my trustee hereunder, in the form it then shall be, shall go in fee simple and shall be conveyed and transferred by my trustee in fee simple, freed of all trusts, to the issue of my children as follows:" (the will then, in detail, directs the disposition of the corpus of the estate to the issue of testator's five children).

Items 7 and 8 of the will read as follows: "I hereby empower my executor, as executor, to sell and transfer any of my real estate at the executor's discretion if such sale shall seem necessary, as a part of the ordinary administration of my estate in court; such sale or sales to be made at such time or times and for such price and on such terms as to my executor may deem best, and the executor may make any such sale or sales without any order of court and without appraisement or other formality.

"I hereby authorize and empower my trustee herein, after the settlement of my estate proper in court, as trustee, and from time to time, to sell and transfer, at the trustee's discretion and for prices and on terms satisfactory to the trustee, for purposes of investment and re-investment and for the repair and improvement of real estate, any part or parts or all of my real estate and of my personal property, and any real estate or per-

sonal property in which any proceeds of sale or sales shall at any time be invested shall be affected by this power of sale, and by the provisions of this will just as are the real estate and personal property possessed by me at the time of my death affected: Purchasers of real estate or of personal property acquired from my trustee or from my executor, while the trustee or executor purports to be acting under any power herein granted, shall not be held to any duty of diligence respecting the proper application of the proceeds of sale, or of the necessity or propriety of making the sale, and any deed or instrument of transfer of my trustee or executor, purporting to be made under and in pursuance or performance of this will, or of any power herein granted, shall vest in the purchaser the title attempted to be conveyed or transferred as fully as would a like instrument executed by me in person."

The testator owned at the time of his death three parcels of real estate, the residence property and a duplex house, all in Woodruff Place, and two lots on Northwestern Avenue in Indianapolis, Indiana, then and continuously up to the filing of the final report used for the plant of the business of the Hercules Manufacturing Company. The Northwestern Avenue lots are still owned by the estate of John A. Kurtz, deceased.

The Union Trust Company, in its name as executor and trustee, and acting as such under the will of John A. Kurtz, deceased, sold, at private sale, and by deed conveyed and transferred the apartment in Woodruff Place for the sum of $6,300 cash to Chauncey D. Meier, husband of testator's daughter, Mary J. Meier; that it also sold and conveyed by warranty deed to Frederick L. Donnell for $10,000 cash the residence property in Woodruff Place; and the sale price in each instance was the full cash value thereof at the time of the respective sales.

The several charges made for services performed by the Union Trust Company, as trustee and executor, prior to the filing of the final report, to wit, the sum of $13,529.98, and subsequent thereto, to wit, the sum of $500, were and are of the value of the respective sums above mentioned and set forth. The several charges of the law firm of Baker and Daniels for legal services rendered the appellee prior to the filing of the final report, to wit, $1,500, and subsequent to the filing of the report in the sum of $2,500, were of the value of the respective services above mentioned.

In November, 1906, decedent, John A. Kurtz, was the owner of a plant, property and business at Indianapolis, Indiana, known as the "Hercules" manufacturing business, with its factory and offices at 2128 Northwestern Avenue, in Indianapolis, Indiana, the principal product of the factory being low tension magnetos. The decedent then considered the plant, property and business, as a going concern, fairly worth $34,449.41, and, after paying all of its liabilities, to wit, $9,449.41, fairly worth $25,000 net.

In November, 1906, John A. Kurtz caused to be organized, under and by virtue of the laws of Nevada, a corporation, viz., "Hercules Electric Company," with capital stock of $25,000, of which $15,000 was common stock and the remaining $10,000 preferred stock. There were but three incorporators of the Nevada company, viz., John A. Kurtz, his brother, William E. Kurtz, also a manufacturer, and John A. Kurtz's son, Stewart H. Kurtz, one of the exceptors herein; that John A. Kurtz transferred, subject to the $9,449.41 in liabilities, all of the Hercules property and business (except the factory real estate) to the "Hercules Electric Company" of Nevada, in consideration of the issuance to him, or to his nominees, as fully paid up, all of the $10,000 of preferred stock, and all the $15,000 of common stock; and

John A. Kurtz caused one share of the common stock to be issued to his brother, William E. Kurtz, and one share of the common stock to Stewart H. Kurtz, and caused all of the $10,000 of preferred stock and all of the common stock of the company, except two shares of common stock, to be issued to himself, John A. Kurtz. The three incorporators were the only directors.

John A. Kurtz was president of the Nevada company, and exceptor Stewart H. Kurtz was its secretary continuously from the date of its incorporation until November 5, 1913, when John A. Kurtz died; from November, 1906, until November 5, 1913, John A. Kurtz and Stewart H. Kurtz were two of the three directors of the Nevada company; that, for a part of that time, viz., the last few years of John A. Kurtz's life and up to and after his death, Chauncey D. Meier, son-in-law of said testator, was a director of the Nevada company and its vice-president, owning one share of its common stock; that, by gift, Stewart H. Kurtz, before his father's death, acquired from his father, John A. Kurtz, shares in the Nevada company, both common and preferred, as follows: 12 per cent of the preferred stock; 12 per cent of the common stock; that immediately before and at the death of John A. Kurtz, Stewart H. Kurtz continued to own the proportion of the stocks and John A. Kurtz owned all of the remainder of the two classes of stock, except one share of the common stock, the legal title to which he had transferred to Chauncey D. Meier, to qualify him as a director.

Katherine Blake Kurtz, wife of the testator, survived him and died on December 11, 1923, not having married after the death of her husband, John A. Kurtz, and all of the five children of John A. Kurtz and Katherine B. Kurtz survived her, are still living, and are exceptors herein.

Immediately after November 11, 1913, the two living directors of the Nevada company, Stewart H. Kurtz and Chauncey D. Meier, elected as a director, to fill the place made vacant by the death of the decedent, John A. Kurtz, Mr. J. H. Holliday, the president of the Union Trust Company, and the three persons named constituted the board of directors of the Nevada company from that time on, Mr. Holliday being president; Chauncey D. Meier, vice-president, and Stewart H. Kurtz, secretary of that company.

Throughout all the time Chauncey D. Meier was vice-president of the Nevada company and throughout the time Stewart H. Kurtz was secretary of the Nevada company, they respectively had their offices at the Hercules factory and were respectively and constantly in the active management of the business of the Nevada company, and the books and accounts of that company were made and kept by its bookkeeper at the factory. The bookkeeper of the company was a Miss Rousch, who had been its bookkeeper for many years before the death of John A. Kurtz, and she continued to be the bookkeeper at the factory from the testator's death until about May 1, 1920, when she resigned.

The bookkeeper of the Hercules Electric Company took off the books monthly the trial balances, put in evidence, and furnished copies of them to the company's vice-president, C. D. Meier and to the Union Trust Company. These were of the character and in the form adopted and used for many years before by John A. Kurtz, and they purported to and did show only "book" values as distinguished from appraised values.

Soon after the death of the testator, the three stockholders of the Nevada company, viz., the Union Trust Company as executor and trustee of the John A. Kurtz estate, owning, as such, 88 per cent of the shares of its $15,000 of common stock and 88 per cent of the

shares of its $10,000 preferred stock, and Stewart H. Kurtz, owning 12 per cent of the shares of the company's common stock and 12 per cent of the shares of its preferred stock, and directors J. H. Holliday and C. D. Meier, owning each one share of common stock of the Nevada company, the equitable title to which was in the estate, all of the directors of the Nevada company and the widow Katherine B. Kurtz, who, under the will was, for her life, to receive all of the net income of the estate of her husband, John A. Kurtz, united in the belief that the estate should not be subjected to loss by reason of the taxing in Indiana of this Nevada company stock, and in the belief that an Indiana corporation should be formed, with the same stock ownership, which would acquire the Nevada company's property and business, but subject to the Nevada company's debts, and, accordingly and mainly to carry out that purpose, "The Hercules Electric Company" of Indiana was incorporated on January 31, 1914.

In "The Hercules Electric Company," an Indiana corporation, the incorporators signing the articles of association were Katherine B. Kurtz, Stewart H. Kurtz, Chauncey D. Meier, John H. Holliday and Albert Baker, and these five incorporators were the directors, and the only directors, from the date of incorporation until the death of John H. Holliday in October, 1921.

From the incorporation of that company until his death, John H. Holliday was president of the company, and Chauncey D. Meier was its vice-president. From the incorporation of that company until the fall of 1918, Stewart H. Kurtz was secretary of the company, at which latter time, because of his ill health, he retired as secretary, and George A. Buskirk was elected to the office of secretary and served as such from that time on.

From January 31, 1914, continuously until about July 20, 1920, Chauncey D. Meier, vice-president, was

at all times in the office, at the factory, of "The Hercules Electric Company" of Indiana, its highest officer at the works, and was in principal charge, at the factory, of the business and affairs of the company, and from January 31, 1914, until the fall of 1918, Stewart H. Kurtz, secretary, was at all times in the office, at the factory, of the company and engaged in the company's activities, and principally in charge of manufacturing its product, mainly magnetos, and was engaged in carrying on part of the correspondence of the company.

From the latter part of April, or the early part of May, 1920, and until the transfer was made hereinafter mentioned to McCutcheon, Stewart H. Kurtz, by arrangement between the president, John H. Holliday, and Katherine B. Kurtz, was at the factory and spent his time there in the interests of the Hercules Electric Company of Indiana, and again became familiar with its affairs.

From the time of incorporation, and always, the capital stock of the Hercules Electric Company, the Indiana corporation, was $25,000, all common stock. At the time of its organization, the last-named company offered to transfer to the Hercules Electric Company of Nevada, or to its nominees, all of the Indiana company's $25,000 of common stock and offered to assume all of the debts and liabilities of the Nevada company in exchange for all of the property of every kind and the good will of the Nevada company; that the offer was accepted and the Nevada company transferred to the Indiana company all of its property and its good will, and the Indiana company, by direction of the Nevada company, issued direct to the stockholders of the Nevada company, common and preferred, in the proportion they held the stocks of the Nevada company, all of the stock of the Indiana company, viz., $25,000, all common stock, in lieu of their stocks, common and preferred, in the

Nevada company, viz.: To and in the name of the Union Trust Company, as executor and trustee under the will of said John A. Kurtz, 216 shares; to Stewart H. Kurtz, 30 shares; to John H. Holliday, 1 qualifying share; to Katherine B. Kurtz, 1 qualifying share; to Chauncey D. Meier, 1 qualifying share; to Albert Baker, 1 qualifying share. The equitable title to the four qualifying shares was in the estate.

The business of the "Hercules Electric Company" of Indiana, was, until the early part of the year, 1920, conducted at a profit resulting in the payment of substantial dividends to its stockholders, except for its first year, 1914.

In the spring of 1920, it came to the knowledge of the Union Trust Company and of the directors of the Hercules Electric Company, from information given them by Stewart H. Kurtz and Chauncey D. Meier, that the company was under contract for the manufacture, sale and delivery, in the then near future, of some 13,000 magnetos, which, because of the general increasing cost of materials and the general increasing scale of wages, both then obtaining, could not be manufactured for the contract price, and that the loss to the company on each magneto, if the contracts of sale should be performed, would be from $2.50 to $4, each varying according to the different kinds and size of the magnetos contracted to be sold; that the company was then losing money, and both Stewart H. Kurtz and Chauncey D. Meier urged that some action be taken at once to better this embarrassing situation.

At the time the above information was communicated to the Union Trust Company, there was a dividend of 10 per cent, or $2,500, which had been declared in February, 1920, but payable by July, 1920, in part unpaid, and the Hercules Electric Company owed the Union Trust Company $14,000 for money borrowed.

The officers of the Union Trust Company and the directors of the Hercules Electric Company immediately met together, at times daily, to consider ways and means to save the electric company from the threatened insolvency and loss. Certain well-known manufacturers were called upon for advice as to the best means to prevent the certain disaster to the Hercules Electric Company. It also developed by the investigations of the several advisors to the appellee and the directors of the Hercules Electric Company that the plant machinery was, for the most part, old, worn and out of date.

On June 21, 1920, one Charles G. McCutcheon, whom several of the advisors of the appellee and the directors of the Hercules Electric Company had mentioned and recommended as a competent business man and manufacturer and as one likely to become interested in the business, presented to the directors of the Hercules Electric Company a written proposal, in the form of an option, which was, in writing thereon, accepted and approved by the Hercules Electric Company, and by every stockholder and by every director of the company, and by every living adult beneficiary under the will of John A. Kurtz, deceased. The proposal for an option and such acceptance, and such approval addressed to the Hercules company, its stockholders and directors was of the following tenor: McCutcheon to be given the opportunity to visit, examine the Hercules factory, make an inventory of the assets of the Hercules Electric Company, direct the general management of the factory for a period of approximately 30 days for the purpose of determining whether he, McCutcheon, would purchase the Hercules Electric Company upon the following conditions and stipulations, to wit: (1) The purchase price to be paid for all the company's assets to be the net worth of such assets at the date of McCutcheon's election to buy; the value of the assets to be determined by

an appraisal of the same, one appraiser to be chosen by McCutcheon and one by the Hercules Electric Company; the appraisers to determine the fair cash value of each item of the inventory and every item of property of every kind owned by the Hercules Electric Company which would be included in the inventory, and to appraise the same as a "going concern," except good will or intangible assets, such as patents, designs, etc.; the inventory to include all liabilities of the Hercules Electric Company, which would be attached to the list and inventory of assets; the difference between the total sum of the inventoried and appraised assets and the liabilities of the Hercules Electric Company to be and constitute the net worth of the Hercules Electric Company and of its assets; (2) the purchase price to be paid in the following manner, viz., McCutcheon to cause to be incorporated, under the laws of the State of Indiana, a corporation to own and operate the property, and such corporation to issue 7 per cent preferred stock for just the amount of the purchase price to be paid by McCutcheon for the net assets of the Hercules Electric Company; the purchase-price preferred stock should bear 7 per cent cumulative dividends per annum payable semi-annually and redeemable at the option of the new company at 103 plus accrued dividends; (3) immediately upon the issuance of the preferred stock, and concurrently with the transfer to McCutcheon of the assets of the Hercules Electric Company, the whole of such preferred stock should be delivered as fully paid up to the present holders of the common stock of the present Hercules Electric Company in the proportion such holders respectively now hold common stock of the Hercules Electric Company. The option contract was signed by Charles G. McCutcheon, accepted by the Hercules Electric Company by John H. Holliday its president, approved in writing by the Union Trust Company,

executor and trustee of John A. Kurtz's estate; Katherine B. Kurtz, Stewart H. Kurtz, C. D. Meier, John H. Holliday and Albert Baker, as directors and stockholders of the Hercules Electric Company, with the exception of the Union Trust Company executor and trustee, which approved the contract as a stockholder; the contract also had the approval in writing of Lillian Kurtz Swift, Margaret Kurtz Zimmer, Mary Kurtz Meier and Helen Kurtz Douglas, four of the adult beneficiaries under the will and exceptors herein.

Thereafter, and on July 14, 1920, the Union Trust Company as executor and trustee under the will of John A. Kurtz, deceased, presented to the Probate Court of Marion County, Indiana, a petition for instructions, which alleged in detail several transactions heretofore set forth in the proposed sale and transfer of the assets of the Hercules Corporation to McCutcheon, and exhibited to the court the option contract and acceptance thereof, with the several signatures attached thereto; the inventory of the property to be transferred taken in connection with the sale and a list of the liabilities to be assumed by the purchasers.

The court thereupon made an order ratifying and approving the acts of the executor and trustee in the proposed sale, and directed the executor and trustee "to take all necessary and appropriate steps to effect such sale of the assets of the Hercules Electric Company."

The inventory and appraisal disclosed that the net assets of the Hercules Electric Company was of the book value of $100,000.

That, in pursuance of the option and the acceptance thereof, McCutcheon caused his attorneys, each acting individually, to become incorporators of an Indiana corporation under the corporate name "Hercules Manufacturing Company" with an authorized capital of $400,000, consisting of $100,000 preferred, and $300,000

common stock, the three incorporators subscribing for one share, or $100 each. The articles of association of this new Indiana company were duly filed and recorded as provided by law.

Thereupon, McCutcheon made to the Hercules Manufacturing Company a written proposal that he would sell and transfer to the Hercules Manufacturing Company all of the property and good will of the Hercules Electric Company of Indiana, except its patents, but subject to the debts of the Hercules Electric Company, of Indiana, in consideration of the issuance to him, or to his nominees, of all of the $100,000 of preferred stock and 2,520 shares of its common stock, both as fully paid up and nonassessable, and directed that, if his proposition should be accepted, the certificates for the whole of the $100,000 preferred stock should be issued to and in the name of the Union Trust Company, as executor and trustee under the will of John A. Kurtz, deceased, $88,000, and to and in the name of Stewart H. Kurtz, $12,000 and certificates for the common stock should be issued $84,000 to and in the name of Frank Remy, $84,000, to and in the name of Perry Remy, and the remaining $84,000 of the common stock so to be issued to and in the name of Charles G. McCutcheon; the proposal was accepted by the Hercules Manufacturing Company, and the $100,000 of preferred stock, and the $252,000 of common stock were issued and delivered to and in the names of the Union Trust Company, executor and trustee, Stewart H. Kurtz, and Remy, Remy and McCutcheon, all as so requested by McCutcheon, and the $88,000 and $12,000 of preferred stock still stands on the books of the company in the names of the Union Trust Company, as executor and trustee of the estate of John A. Kurtz, deceased, and Stewart H. Kurtz respectively, the Hercules Electric Company of Indiana having directed McCutcheon to

cause the preferred stock to be issued in those amounts and in those names, the Union Trust Company and Stewart H. Kurtz having joined the electric company in such written direction.

The Hercules Electric Company, by its proper officers, acting by authority of its board of directors, and in pursuance of the option and the acceptance of it by McCutcheon, executed and delivered all bills of sale and deeds necessary to pass title to its real estate, its personal property and good will, subject to its debts, and the Hercules Electric Company, instead of taking the $100,000 of preferred stock in its own name, caused the same to be issued to the Union Trust Company, as executor and trustee of the estate of John A. Kurtz, deceased, and Stewart H. Kurtz, in his individual capacity, in the proportions they respectively then owned the title, legal or equitable, to the $25,000 of common stock of it, the Hercules Electric Company, of Indiana, viz., 88 per cent owned by the Kurtz estate and 12 per cent owned by Stewart H. Kurtz.

At the many meetings of the directors of the Hercules Electric Company held in May and June, 1920, the need of some change in the company to prevent disaster to it and the plan that was finally carried out with McCutcheon were fully and freely discussed and were well understood by all of the directors, including C. D. Meier, S. H. Kurtz, and all the stockholders. At most of these meetings, and at all conferences between Mr. J. H. Holliday and Mrs. Katherine B. Kurtz, the exceptor Lila Kurtz Swift was present with her mother, Katherine B. Kurtz, and they both and all knew and understood what was being attempted and the threatening conditions that prompted the doing of it. The Union Trust Company, executor and trustee, and every one of the stockholders and directors of the electric company were of the opinion at the time the McCutcheon option was given, and at

the time it was carried into execution, that what was being done was the best that under the then conditions could be done in the interest of the Hercules Electric Company and of the Kurtz estate, and of the other stockholder, Stewart H. Kurtz. Stewart H. Kurtz and all of the living adult prospective beneficiaries under John A. Kurtz's will, viz., the exceptors herein, approved in writing and assented to what was being done, and the Union Trust Company, as executor and trustee under the will, in all it did in the premises, acted under the instructions and approval of the Probate Court of Marion County, Indiana.

The widow and adult children of John A. Kurtz, before giving such approval, consulted with Stewart S. Kurtz, of Canton, Ohio, who was in Indianapolis several times in that behalf, and familiarized himself with conditions at the factory and with the terms of the McCutcheon option, and he advised them and the executor and trustee that, in his opinion, the proposed arrangement with McCutcheon should be carried into effect.

No stockholder or director in the Hercules Electric Company, and no beneficiary, present or prospective, under the will of John A. Kurtz, deceased, understood that McCutcheon or either of the Remy brothers was to put money into the property or business which McCutcheon was acquiring for himself and the Remys from the Hercules, but all knew that McCutcheon and the Remys were not to put in cash, but that they were taking the property subject to a first charge of $10,000 in the form of preferred stock in favor of the stockholders of the old company, and that they would bring to the business their time, attention and exceptional ability from experience in manufacturing, and especially in manufacturing and selling magnetos.

At and from June 21, 1920, when McCutcheon made his offer for an option, all of the directors and stock-

holders of the Hercules Electric Company of Indiana knew that in making it he was acting in behalf of the Remy brothers and himself.

For the stock of the Hercules Manufacturing Company that was issued, viz., $100,000 preferred, and $252,000 common, no cash consideration was paid, but there was paid for it to the Hercules Manufacturing Company all of the property, including good will, of the Hercules Electric Company of Indiana.

The Hercules Manufacturing Company was duly incorporated under the laws of Indiana, and, at the time of its issuance of the preferred stock to the Union Trust Company as executor and trustee of the estate of John A. Kurtz, deceased, and to Stewart H. Kurtz, by direction of the Hercules Electric Company, was a valid and *bona fide* corporation with authority of law to issue the preferred stock.

In the spring of 1920, the industrial situation in this country, as was believed, had just reached the crest of an unprecedented period of inflation, following the World War, and the financial world was anticipating a change to deflation to be realized in the summer or fall of 1920. Manufacturers over the country, in that spring of 1920, were financially hard pressed, because of high prices of raw material and labor, and the falling off of orders for manufactured products, and many of them failed or went out of business. For these reasons, it was at that time difficult, if not impossible, to sell a manufacturing business for cash or to procure manufacturers to embark in any new enterprise.

The Union Trust Company, as executor and trustee under the will of John A. Kurtz, deceased, and in that capacity a stockholder in the Hercules Electric Company, and all the other stockholders in that company, and all of the members of its board of directors, and all of that company's officers, and Mrs. Katherine B.

Kurtz, and all the adult prospective beneficiaries under the will, in all that they did to bring about the giving of the option to McCutcheon and the carrying of it into execution, acted in good faith, believing that to do what they did was necessary and for the best interests of the Hercules Electric Company, and of its stockholders, and that it was the only available solution of the problem.

The Hercules Manufacturing Company made little or no money and, with the exception of one partial dividend in 1920, paid no dividend in 1920, 1921 or 1922 on its $100,000 of preferred stock. In the spring of 1923, Katherine B. Kurtz, then under the will the beneficiary of all of the net income of the estate, and her five children, viz., the exceptors herein, made request of the Union Trust Company, as such executor and trustee under the will, that the Hercules Manufacturing Company and its property and business be put into the hands of a receiver, and, upon Mr. Baker's refusal to bring a suit as attorney for the Union Trust Company for the appointment of a receiver, the trust company, at the request of the beneficiaries and, on their selection, employed in that behalf Mr. William H. Thompson of Indianapolis as its attorney. Mr. Thompson advised the trust company and the beneficiaries that, in his opinion, for legal and prudential reasons, a receiver should not be applied for. Thereupon, with the approval of the adult beneficiaries, Mr. Thompson undertook to procure a personal obligation from the Remy brothers to pay a reduced amount, semiannually for two years, ending July 1, 1925, viz.: Three per cent per annum instead of seven per cent dividend on the preferred stock. After much negotiation, such an agreement was executed, which, on a petition of the Union Trust Company, executor and trustee, prepared by Mr. Thompson, was approved and ratified by the Probate Court of Marion County, Indiana, by an order of court entered May 31,

1924, all of the beneficiaries being in court by their attorney and assenting thereto. That the petition was filed and the order was entered May 31, 1924, and the contract was dated June 2, 1924, and, under that date, the judge of the probate court, in writing, signed his approval of the contract.

A dividend, at the reduced rate, was paid by the Hercules Manufacturing Company for the year ending July 1, 1924, and an amount equal to the dividend at the reduced rate was paid, in lieu of dividend, by the Remy brothers for the year ending July 1, 1925, and no further or other dividend or payment of any kind on account of dividends was paid on the preferred stock of that company up to the filing of the final report, herein excepted to.

Katherine B. Kurtz having died in December, 1923, the five children of John A. Kurtz, viz., the exceptors herein, in 1926, employed William Bosson as their attorney, who, for his clients, demanded of the Union Trust Company, as executor and trustee, and preferred stockholder in the Hercules Manufacturing Company, by letter, that it apply for a receiver of that company; the Union Trust Company replied by letter that, in its opinion, the Hercules Manufacturing Company should be allowed a longer time to try to bring the business into successful operation, and that, in its opinion, to put the property into the hands of a receiver would sacrifice the interest of the Kurtz estate in the stock and business of the Hercules Manufacturing Company. Thereupon, the beneficiaries, by their attorney, demanded that the trust company comply with their request or resign its trusts under the will. The trust company, in reply, informed the beneficiaries that it would resign as trustee under the will and would file its final report as executor. The trust company then notified the judge of the Probate Court of Marion County, Indiana, that it then resigned its trus-

teeship under the will, and that it was preparing and would file a final report as executor and ask to be discharged as executor as upon a full administration of the testator's estate. By some inadvertence, no entry was made of the resignation, and the instrument of resignation was lost from the files of the court, and, on October 22, 1926, Stewart H. Kurtz, one of the exceptors herein, and the other exceptors, filed in the probate court a petition for the appointment of Stewart H. Kurtz as trustee under his father's will, and the court granted the prayer of the petition and entered an order thereon.

Thereafter, on November 18, 1926, the Union Trust Company, as executor and trustee under the will of John A. Kurtz, filed its final report in the Probate Court of Marion County, Indiana, and, with the report, paid and delivered to that court and to the clerk of that court all of the money and property mentioned in the receipt then given to it by the clerk.

Thereafter, and before December 2, 1926, Stewart H. Kurtz, as such successor trustee under his father's will, petitioned the probate court of Marion County, Indiana, for permission to take possession, as such trustee, of all of the money, securities and property of the estate, so delivered and paid by the Union Trust Company, with its final report, to the clerk of the court, except the 880 shares of preferred stock of the Hercules Manufacturing Company, and the court granted the prayer of that petition. Thereupon, Stewart H. Kurtz receipted and took possession of all the property except 880 shares of preferred stock of the Hercules Manufacturing Company.

On December 22, 1926, Stewart H. Kurtz, as successor trustee under the will of John A. Kurtz, filed his complaint for damages in the superior court of Marion County, Indiana, Cause No. A38,089, which suit is still pending, against the Union Trust Company of Indian-

apolis and others, asking, among other things, for the appointment of a receiver for the Hercules Manufacturing Company.

In the suit No. A38,089 in the Marion Superior Court, the court thereupon appointed William Bosson, Jr., as receiver of all of the property and business of the Hercules Manufacturing Company, and the receiver, by authority of the court, operated the plant until he sold it. The receiver, thereafter, on April 23, 1927, petitioned the court for authority to sell all of the physical property and assets in his hands as receiver and stated in the petition that he had had the same appraised, and that the appraisement was $34,409, and the court authorized a sale at private sale, by its order of April 23, 1927, and, under such order, the receiver sold all of the property to Stewart H. Kurtz, individually, acting in that behalf by a bidder, one Berger, once an employee of the Hercules Manufacturing Company, for the sum and price of $5,000 cash, and the sale was approved by the court, and thereupon Stewart H. Kurtz took possession of the property, incorporated an Indiana corporation known as "Hercules Manufacturing Incorporated," to which he caused to be transferred the property so purchased from the receiver, and Stewart H. Kurtz now owns all, or practically all, of the stock in the corporation which is now operating the plant.

That Stewart H. Kurtz, on May 20, 1927, as such successor trustee under his father's will, filed in the Probate Court of Marion County, Indiana, his petition, with exhibits, asking authority to take and appropriate to his own use in his individual capacity $10,000 of the corpus of the trust property and estate, stating in his petition that he had as an individual a one-fifth interest therein by the will of his father. The several exhibits were the separate written consents of Helen K. Douglas, Lila K. Swift, Stewart H. Kurtz, Margaret K. Zim-

mer and Mary Jackson Meier, each of whom stated in his or her separate written consents that he or she was the owner of a one-fifth interest of the entire trust estate of John A. Kurtz, now in the hands of Stewart H. Kurtz as trustee.

The court entered an order accordingly, and Stewart H. Kurtz withdrew $10,000 of the corpus of the estate for his own use and benefit.

The court stated its conclusions of law, eight in number, which are, in substance, as follows: All objections addressed to the two sales of the real estate by the executor and trustee, to the compensation of the executor and trustee and its attorneys, to or in any way connected with the stock in the Hercules Electric Company, an Indiana corporation, the preferred stock in the Hercules Manufacturing Company or the manufacturing property, plant and business known in the evidence as "The Hercules," are all separately and severally not well taken, overruled and disallowed, and the final report of the Union Trust Company is approved and allowed.

The exceptors, and as long as Katherine B. Kurtz lived, throughout the period of the trust herein mentioned, continually addressed the Union Trust Company both as executor and trustee and treated it as acting in both capacities.

The Hercules Manufacturing Company paid all the debts and obligations of the Hercules Electric Company of Indiana which had been assumed by McCutcheon under his option, including the $1,500 unpaid balance owing to the John A. Kurtz estate and to Stewart H. Kurtz on the 10 per cent dividend declared by the Hercules Electric Company of Indiana on February 19, 1920.

The Union Trust Company, as executor and trustee, and as a holder of preferred stock in the Hercules Manu-

facturing Company, and Stewart H. Kurtz, also a holder of such preferred stock, attended the general meetings of the stockholders of that company.

Appellants' brief, under the division entitled "Points and Authorities," contains 18 separately numbered points, each addressed specifically to the separately numbered conclusions of law as stated by the trial court. Appellants do not address a point or proposition to the error properly assigned, the overruling of the motion for a new trial, or any cause thereunder, nor to the other error, properly assigned, the overruling of appellants' motion for a *venire de novo*. Under the rules, the Appellate Court must consider the several errors, to wit: The overruling of the separate and several motions for a new trial, and *venire de novo* waived.

The exceptions to the several conclusions of law admit, for the purpose of the exception, that the facts are fully and correctly found by the trial court. *Walb Construction Co.* v. *Chipman* (1931), 202 Ind. 433, 175 N. E. 132.

In the instant case, the will, by its provisions, authorized and empowered the executor to sell the testator's real estate, and such sales of the real estate were to be made "at such time or times and for such prices and on such terms" as the executor deemed best, and the executor was expressly authorized to make any such sale or sales without an order of court and without appraisement or other formality. The Union Trust Company, as executor, had the authority by the express provisions of the will to make the several sales of real estate without petition, appraisement and order of the court. §3206 Burns 1926; *Ackerman* v. *Fichter* (1913), 179 Ind. 392, 101 N. E. 493, 46 L. R. A. (N. S.) 221, Ann. Cas. 1915D 1117; *Munson* v. *Cole* (1884), 98 Ind. 502.

The trial court found that the executor obtained the full cash value at the time of the sale of the two parcels of real estate, consequently no harm resulted to the estate. We find no error of the court in the conclusion of law that the objections so far as addressed to the sales of real estate are not well taken and are overruled and disallowed.

Again, under the facts as found, no reversible error is available to appellants by virtue of the exceptions to the several conclusions of law wherein the objections to the several allowances made by the Marion Probate Court to the executor and trustee and its attorneys for services rendered the estate and trust, were overruled and disallowed.

Appellants challenge the action of the executor and trustee, the holder and owner, in trust, of 88 per cent of the entire common capital stock of the Hercules Electric Company in approving the option contract with McCutcheon, whereby the entire assets of the Hercules Electric Company were transferred to the Hercules Manufacturing Company, and the common capital stock of the Hercules Electric Company surrendered, and, in lieu thereof, preferred stock in the Hercules Manufacturing Company of the par value of $88,000 was accepted, on the ground that such action of the executor and trustee was beyond the terms of the will and in contravention of the law of our state as applied to executors and trustees in the sale of personal property held in trust, citing, in support thereof, §§3119, 13442, 13444, 13446, 13462 and 13463 Burns 1926. In view of our conclusions, which are subsequently set forth, we do not deem it necessary to pass on the above propositions as presented by appellants.

Appellees contend that all of the adult beneficiaries of the income of the estate of John A. Kurtz, deceased, objectors herein, concurred in all of the various steps taken

by the Union Trust Company as executor and trustee, in furthering the sale and transfer of the assets of the Hercules Electric Company to the Hercules Manufacturing Company, and, after the consummation of the sale, acquiesced in the several actions of the executor and trustee for a period of six years; that such objectors are separately and severally estopped to challenge the several actions of the trustee taken in reference to such sale and the transfer of the stock. Appellants assert that, estoppel not having been pleaded, it is not available as a defense, even though the special finding of facts discloses a state of facts that would estop these objectors and that such findings are outside the issues and are to be disregarded.

Where objections are filed to the final report of an administrator or executor, the report constitutes the "complaint" and the objections the "answer." In *Dohle* v. *Stults, Admr.* (1884), 92 Ind. 540, objections were filed to the final report of the administrator. The objections contained affirmative matter, and the administrator with the will annexed filed an affirmative answer to such exceptions. The exceptors thereupon demurred to the answer, which was by the court overruled, which ruling was assigned as error on appeal. The court said: "Section 2391, R. S. 1881, provides that exceptions may be filed to such report, but the code does not authorize an answer or contemplate any such pleading. The question of fact raised by the exception is deemed denied or avoided, as the case may be, without any additional pleading. As no additional pleading is authorized, no question can be presented by a demurrer to such pleading, and, therefore, the ruling upon the demurrer in this case presents no question. *Welch* v. *Bennett,* 39 Ind. 136; *Beeber* v. *Bevan,* 80 Ind. 31." The above section of the Revised Statutes of 1881 was amended in 1883, and, as so amended, is found in §3241

Burns 1926. The Supreme and Appellate Courts have consistently held that the report of an administrator or executor stands as the complaint, and the exceptions the answer, and the cause is tried on the issues thus raised. *Miller* v. *Bode, Admr.* (1923), 80 Ind. App. 338, 139 N. E. 456; *McConnell* v. *American Nat. Bank* (1914), 59 Ind. App. 319, 103 N. E. 809; *Bossert* v. *Geis* (1914), 57 Ind. App. 384, 107 N. E. 95; *Shuey* v. *Lambert* (1913), 53 Ind. App. 567, 102 N. E. 150; *Spray* v. *Bertram* (1905), 165 Ind. 13, 74 N. E. 502; see, also, *Sohl* v. *Wainwright Trust Co., Gdn.* (1921), 76 Ind. App. 198, 130 N. E. 282.

In the light of the foregoing authorities, we hold that where the final report of the executor and trustee is challenged by objections as was done in the instant case, the executor and trustee may make proof of a state of facts which discloses that the beneficiaries of the trust have estopped themselves to question the acts of the executor and trustee of which they complain without a special pleading to that effect.

It necessarily follows that all matters of estoppel or waiver pertaining to the administering of John A. Kurtz's estate involved in the final report or the objections thereto were within the issues of this case, and the facts found by the court which support the issue of estoppel or waiver cannot be disregarded.

We do not believe that it would serve any good purpose to recapitulate the facts as found by the trial court to show that the objectors are estopped to question the acts of the executor and trustee in the several steps taken by it in furthering the sale and transfer of the assets of the Hercules Electric Company. Suffice it to say, the trial court found that these adult beneficiaries participated in each and every action taken by the executor and trustee in reference to the

"Hercules Stock," prior and subsequent to the surrender of the common capital stock of the Hercules Electric Company, and the acceptance of the preferred capital stock in the Hercules Manufacturing Company.

It is the law that, where beneficiaries are of full age, under no legal disability, cognizant of their rights under the trust agreement, and advised as to the character of securities the trustee contemplates investing the trust money in, or the exchange of one security for another, no misrepresentation or fraud on the part of the trustee being present, separately and severally concur with the trustee in such investment or change of investment, they will be estopped to thereafter question the propriety of such an investment. *In re Keane* (1916), 97 Misc. Rep. 213, 162 N. Y. Supp. 856, Id., 95 Misc. Rep. 25, 160 N. Y. Supp. 200; *In re McDowell* (1918), 102 Misc. Rep. 275, 169 N. Y. Supp. 853, Id., 97 Misc. Rep. 306, 163 N. Y. Supp. 164; *Furniss* v. *Zimmerman* (1915), 90 Misc. Rep. 138, 154 N. Y. Supp. 272; *In re Hall* (1900), 164 N. Y. 196, 58 N. E. 11; *Phillips, etc.,* v. *Burton, etc.* (1899), 107 Ky. 88, 52 S. W. 1064; see *Wilmore* v. *Stetler* (1893), 137 Ind. 127, 34 N. E. 357, 36 N. E. 856, 45 Am. St. 169; 39 Cyc. 519, §9; 2 Perry, Trusts 1449, §849.

It is also the law that beneficiaries who are of full age, not under legal disability, who acquiesce for a long period of time in an improper investment made by their trustee, with full knowledge of all the facts and their legal effect, fraud on the part of the trustee being absent, will likewise be estopped to question the propriety of such an investment. *Quimby* v. *Uhl* (1902), 130 Mich. 198, 89 N. W. 722; *Wooley* v. *Hutchins* (1920), 114 Misc. Rep. 11, 186 N. Y. Supp. 769; *White* v. *Sherman* (1897), 168 Ill. 589, 48 N. E. 128, 61 Am. St. 132; *Hoyt* v. *Sprague* (1880), 103 U. S. 613, 26 L. Ed. 585; *Phillips, etc.,* v. *Burton, etc., supra;*

see *Wilmore* v. *Stetler, supra;* 39 Cyc. 519, §9; 26 R. C. L. 1311, §165; 2 Perry, Trusts 1451, §850.

These objectors, appellants herein, cannot prevail as against the special finding of facts and the law applicable thereto.

Judgment affirmed.