LINCOLN NATIONAL BANK
AND TRUST COMPANY,
Appellant–Petitioner,

v.

SHRINER'S HOSPITALS FOR CRIPPLED CHILDREN and Indiana Masonic Home, Appellees–Objectors.

No. 02A03–9109–CV–291.

Court of Appeals of Indiana,
Third District.

March 26, 1992.

Richard P. Samek, Larry L. Barnard, Miller, Carson & Boxberger, Ronald D. Felger, Bordner & Felger, Fort Wayne, for appellant-petitioner.

Brian J. Deppe, Lagrange, Fredbeck & Deppe, Franklin, C. David Peebles, Fort Wayne, for appellees-objectors.

HOFFMAN, Judge.

Appellant-petitioner Lincoln National Bank and Trust Company appeals the trial court's decision ordering it, as trustee of Charles H. Geake's trust, to pay $25,483.55 to the trust.

Lincoln raises seven issues which we will condense to four:

(1) whether the beneficiaries were barred from objecting to the trustee's sale of real estate by the statute of limitations, res judicata, and laches;

(2) whether the trial court's award was clearly erroneous;

(3) whether the trial court erred in awarding interest to the beneficiaries; and

(4) whether the trial court erred in awarding attorney's fees to the beneficiaries.

The facts most favorable to the judgment reveal that on March 14, 1959, Charles H. Geake died, leaving his second wife, Goldie, and his only son by a prior marriage, Robert. By a will executed on March 26, 1956, Charles devised his residuary estate to Lincoln National Bank and Trust Company (hereinafter referred to as Lincoln) to be held in trust by Lincoln for the benefit of Goldie and Robert for the remainder of their lives and then to be distributed to Shriner's Hospitals for Crippled Children and Indiana Masonic Home (hereinafter referred to as Beneficiaries).

The will of Charles H. Geake gave Lincoln, as trustee, "complete and ample authority" over the estate. This authority included the right to sell real estate and convey deeds without reporting to the trial court for approval. Lincoln was absolved from "any responsibility or liability for any loss or depreciation that may arise from the sale" of trust assets.

The trust owned a parcel of real estate which was being leased by Perfection Biscuit Company (Perfection) on a month-to-month basis. The president of Perfection, H. Leslie Popp, was an advisory director of Lincoln.

Popp contacted Luben Lazoff, the vice-president of real estate management of Lincoln, regarding the sale of the real estate to Perfection in 1977. Lazoff, a licensed realtor, attempted to "informally" sell the real estate. There is no evidence that Lazoff discussed the sale with anyone other than Perfection. An appraiser valued the property at $40,300.00. Perfection offered $20,000.00, which was refused by Lincoln. Lincoln sold the property to Perfection in 1979 for $30,000.00 on a conditional sales contract requiring $7,500.00 down and annual installments over a ten-year period.

This transaction was criticized by the federal bank examiners. Lincoln was notified that it had violated 12 C.F.R. § 9.12 entitled "self-dealing" for having a conflict of interest in the sale of the trust real estate. The federal bank examiners noted that H. Leslie Popp was advisory director of Lincoln and president and principal stockholder of Perfection, the real estate was sold for less than appraisal value, and specific authorization was not obtained for the sale.

After this criticism, Lazoff advised it would be in the "best interest of the Trust, and to avoid a possible further criticism for a conflict of interest," that the sale be reversed. However, no action was taken on Lazoff's advice.

Letters were sent to the beneficiaries by Lincoln stating that Lincoln would be submitting an accounting of transactions with the court as well as a petition for approval of the sale of real estate to Perfection due to a principal of Perfection serving as advisory director to Lincoln. No mention was made of the federal bank examiners' criticism of the sale. The trial court refused to approve the sale of the real estate to Perfection.

However, the sale continued and on June 30, 1989, after Perfection had completed its contract with Lincoln, Lincoln petitioned the trial court to complete its contract for conditional sale of real estate and to convey real estate by trustee's deed. The beneficiaries objected to the petition. The trial court granted summary judgment to Lincoln finding that the contract of sale had been completed, the trustee was authorized under the will to sell the real estate without court approval, and the deed should be transferred.

Lincoln filed its final account with the trial court on November 27, 1990. The beneficiaries objected to the final account, requesting that the final account not be approved and the trustee surcharged because the sale of the real estate to Perfection was not court approved, involved a conflict of interest and self-dealing, was sold below the appraisal value, and no reasonable effort was made to find a buyer for the real estate at the appraised value. The trial court found that although the trust could sell the real estate without court approval and without liability for loss or depreciation pursuant to the will, the trustee, Lincoln, did not "exercise the judgment and care under the circumstances which a preson [sic] of prudence, discretion, and intelligence would exercise in the sale of subject real estate in that:

a. Trustee did not seek the services of a professional real estate broker to obtain a purchaser;

b. Trustee did not advertise the property for sale;

c. Trustee made no effort to find buyers other than Perfection Biscuit Co.; and

d. Trustee sold the real estate at $10,000 less than appraised value to a buyer whose principal owner and officer was at said time an 'advisory director of the Trustee bank.' "

The trial court then ordered the trustee to compensate the beneficiaries for the $10,000.00 loss, plus interest at 9% per annum compounded annually until March 1989, and at 8% simple interest from then to date. The trustee was also ordered to pay the beneficiaries' attorney's fees in the amount of $4,500.00. The trustee's fee of $1,035.00 was denied.

▮▮▮ Lincoln argues that beneficiaries' claims are barred by three affirmative defenses: statute of limitations, res judicata, and laches. Lincoln concedes that it did not plead two of the defenses, statute of limitations and res judicata; however, Lincoln claims that it did not have to plead any affirmative defenses. This is true. As stated in *Meier v. Union Trust Co. Exr.* (1931), 93 Ind.App. 457, 485, 176 N.E. 42, 51:

"The Supreme and Appellate Courts have consistently held that the report of an administrator or executor stands as the complaint, and the exceptions the answer, and the cause is tried on the issues thus raised. . . .

In light of the foregoing authorities, we hold that where the final report of the executor and trustee is challenged by

objections as was done in the instant case, the executor and trustee may make proof of a state of facts which discloses that the beneficiaries of the trust have estopped themselves to question the acts of the executor and trustee of which they complain without a special pleading to that effect. [Citations omitted.]"

While Lincoln did not have to plead its affirmative defenses, it did have to raise the issues at trial. Lincoln did not raise the statute of limitations or res judicata at trial. Therefore, these issues are waived from this Court's review.

■ As for the issue of laches, Lincoln pled this defense in its motion to dismiss the beneficiaries' objections and mentioned it in final argument. However, in order to establish laches, Lincoln had to show the following elements: "1) inexcusable delay in asserting a right; 2) implied waiver from knowing acquiescence in existing conditions; and 3) prejudice to the defendant due to the delay." *Board of Zoning Appeals v. Beta Tau Housing* (1986), Ind. App., 499 N.E.2d 780, 782. The party raising laches has the burden of proof by a preponderance of the evidence. *Clay v. State* (1987), Ind., 508 N.E.2d 800. Lincoln did not offer any evidence to establish the elements of laches by a preponderance of the evidence. Therefore, Lincoln may not now make its argument to support its laches defense when it failed to do so at trial.

■ While it is true that Charles Geake's will absolved the trustee, Lincoln, from any liability due to a loss sustained as a result of a sale of real estate, this provision "is not effective to relieve the trustee of liability for breach of trust committed in bad faith, intentionally, or with reckless indifference to the interest of the beneficiary...." IND.CODE § 30–4–3–32(b) (1988 Ed.). Clearly, the evidence supports a finding that the sale of real estate to Lincoln's advisory director constituted a breach of trust committed in bad faith, intentionally, or at a minimum, with reck-

less indifference to the beneficiaries. Lincoln was aware of the real estate's appraisal value of $40,300.00. However, without even attempting to find a buyer willing to pay the appraised value, Lincoln sold the property to a company owned by its advisory director for $10,000.00 less than the appraised value. Even when the sale was criticized by the federal bank examiners, Lincoln continued with the sale, despite the fact that its vice president of real estate management advised that the sale should be reversed. Lincoln tried to legitimatize the sale by obtaining court approval; however, the court refused to approve the sale. Finally after Perfection had completed making payments under the conditional sales contract, Lincoln once again petitioned the court to allow it to transfer the deed to Perfection. Although Lincoln perceives the trial court's order allowing it to transfer the deed to Perfection as an approval of the sale, the trial court simply found that the contract had been completed and a deed should be transferred. After a hearing on the final account, the trial court then awarded judgment to the beneficiaries for the $10,000.00 loss after determining that Lincoln had not exercised proper care and judgment as trustee in selling the real estate. The trial court's determinations that Lincoln failed to seek a real estate broker, did not advertise the real estate for sale, did not make an effort to find a buyer, and sold the real estate to an advisory director for less than the appraised value, at the very least constitute reckless indifference supporting the award to the beneficiaries. In effect, the trial court found that Lincoln had committed a breach of trust.[1] The award to the beneficiaries for the $10,000.00 loss was not erroneous.

■ Lincoln next complains that the trial court should not have awarded interest on the $10,000.00. Lincoln argues that the payments of interest under the contract would be payments for the use of money.

---

**1.** Lincoln concedes that whether beneficiaries had filed a separate claim for breach of trust or whether they raised grounds constituting a breach of trust in their objections is a "distinction without a difference." Similarly, although

the trial court does not specifically mention "breach of trust," the grounds cited by the trial court supporting its award to the beneficiaries are grounds supporting a breach of trust.

This would constitute income for which Robert, an heir, would have received during his lifetime as income beneficiary. Therefore, Lincoln contends that the beneficiaries, as beneficiaries only of the trust corpus, are not entitled to interest that Robert would have received. However, Lincoln is making a number of assumptions here. If Lincoln had looked for a buyer, it might have found a buyer who had available assets from which to pay the appraised value in a lump sum, which amount would have been applied to the trust corpus. If a buyer did not have available assets to purchase the real estate, the buyer might have financed the sale elsewhere, so that Lincoln would not have received the interest on installment payments, but would have received a lump sum amount, which amount would have applied to the trust corpus. Therefore, there is a possibility that Lincoln would have received the additional $10,000.00 and invested the money, from which there would have been an obvious growth in the principal over the years. Therefore, the beneficiaries are entitled to the interest. IND.CODE § 30–4–3–11(b)(3) (1988 Ed.).

Lastly, the trial court properly awarded attorney's fees. When a trustee commits a breach of trust, he is liable for the beneficiaries' reasonable attorney's fees. IND. CODE § 30–4–3–11(b)(4) (1988 Ed.). Since the evidence supports a conclusion that the trustee, Lincoln, committed a breach of trust, there is no error in awarding attorney's fees to the beneficiaries.

Affirmed.

RATLIFF, C.J., and GARRARD, J., concur.